Joseph R. Manning, Jr. (SBN: 223381)
Babak Hashemi (SBN: 263494)
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, California 92660
Tel: 949.200.8755; Fax: 866.843.8308
ecf@manninglawoffic.com

Attorneys for Plaintiffs KAREN S. BITKER and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUST DATED AUGUST 9, 1995

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN S. BITKER, an individual, and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUSTED DATED AUGUST 9, 1995,<br><br>Plaintiffs,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC., a business entity form unknown, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF BAFC 2006-5, a business entity form unknown, THE WOLF FIRM, a business entity form unknown, and DOES 1-100, inclusive,<br><br>Defendants. | CASE No: 3:13-cv-00656-CAB-WMC<br><br>**NOTICE OF *EX PARTE* AND *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER OR STAY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATIONS OF BABAK HASHEMI, KAREN S. BITKER.**<br><br>DATE: MARCH 28, 2013<br>TIME: TBD<br>DEPT: 4C |

PLEASE TAKE NOTICE THAT Plaintiffs, KAREN S. BITKER and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUST DATED AUGUST 9, 1995, hereby apply E*x Parte* to this Court, for a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction or in the alternative a stay

order.

Ex Parte relief is appropriate and necessary in this instance because the Trustee's Sale is scheduled for April 2, 2013 at 10:00 a.m. and Plaintiffs will suffer irreparable harm if Defendants were not enjoined from advertising, holding, conducting or participating in any foreclosure sale and trustee's sale of Plaintiffs' property. Plaintiffs filed suit against Defendants on March 4, 2013 in the Superior Court of California County of San Diego for causes of actions based on California law; however, Defendant's removed the action to this Federal District Court based on Federal Question jurisdiction. Plaintiffs, through their counsel requested that the foreclosure sale of the Subject Property be postponed or canceled, pending a full resolution of Plaintiffs' claims; however, the sale date remains active.

Plaintiffs' Ex Parte application is based on the following:
1. Plaintiffs are likely to succeed on the merits;
2. Plaintiffs will suffer irreparable harm in the absence of a TRO and a Preliminary Injunction;
3. The balance of equities tips in the Plaintiffs' favor;
4. It is in the public's interest.

///

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

2

This *ex parte* application is supported by the accompanying Memorandum of Points and Authorities, Supporting Declarations of Babak Hashemi and Karen S. Bitker, Ex Parte Notice, exhibits, all pleadings and papers on file, and any oral arguments that may be presented at the time of the hearing.

Dated:  March 26, 2013          LAW OFFICES OF JOSEPH R. MANNING, JR.

                              By:   /s/ Babak Hashemi
                              Joseph R. Manning, Jr., Esq.
                              Babak Hashemi, Esq.
                              Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    RELIEF REQUESTED

Plaintiffs hereby seek an order of this court to stop the sale of their home as set forth below. The primary purpose of this hearing is to maintain the *status quo* pending a full hearing on the merits. Plaintiffs are likely to succeed on the merits and will suffer immediate, irreparable harm if Defendants are not enjoined from proceeding with pending the foreclosure sale of the Subject Property which is set for **April 2, 2013.**

Plaintiffs request relief in either a Temporary Restraining Order or a Stay Order as an alternative to preserve the status quo and prevent the irreparable loss of the Subject Property before judgment.  Plaintiffs are likely to succeed on the merits, will suffer irreparable harm in the absence of the relief and the balance of equities tips in Plaintiffs' favor. *See Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008).  With regards to foreclosure related cases, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims." *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011). "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id.* at 791 Quoting *In re Gilead Sciences Sec. Litig.,*536 F.3d 1049, 1057 (9th Cir. 2008).

Moreover, the Ninth Circuit holds that a plaintiff is entitled to injunctive relief if he satisfies either of two tests: (1) the *Winter* factor test; or (2) the "sliding scale" test, also

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

referred to as the "serious questions" test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations. *Se id*. 632 F.3d at 1134-35. Here, the potential for harm to the Plaintiff is great and Plaintiff has made a sufficient showing of likelihood of success of the merits.

## II. <u>STATEMENT OF THE CASE</u>

Plaintiffs filed a complaint against SUNTRUST MORTGAGE, INC. ("Suntrust") and THE WOLF FIRM ("Defendants") for violations of *California Civil Code* §2923.6, *California Civil Code* §2924, Breach of Contract, RESPA Violation, Unfair Debt Collections Practices, Violations of *California Business & Professions Code* §17200, and a demand for Accounting. The case was filed on March 4, 2013. Plaintiffs move *ex parte* for a Temporary Restraining Order to restrain and enjoin Defendants from proceeding with any foreclosure activity relating to the real property commonly known **2018 Valley Road, Oceanside, CA 92056** ("Subject Property")

In 2006, Plaintiff Karen Bitker entered into a written loan agreement for a sum of $626,250 (the "Loan"), secured by the Subject Property through a Deed of Trust recorded April 4, 2006, then and now the principal residence of Plaintiff. (Exhibit **"B"**)

The Subject Property is held in the name of Plaintiff Karen S. Bitker, Successor Trustee of the M.K. Bitker Living Trust Dated August 9, 1995. All future references to Plaintiff are to Karen Bitker.

Plaintiff performed dutifully under the Loan, as required, until 2011 when, due to

the downturn in the economy, Plaintiff suffered a temporary financial setback. Thereafter, she made some of the monthly mortgage payments under the terms of the Loan, but was unable to make all the required payments.

On or about September 2011, Plaintiff contacted Defendant Suntrust, the apparent mortgage servicer of her loan, to inquire about a loan modification option. At this point, Plaintiff's credit score was very high and Plaintiff was current on the payments. Plaintiff continued to be current on the mortgage payments during the modification process until January 2012 when her reserve funds had depleted.

On or about September 29, 2011, Plaintiff submitted all the requested paperwork to apply for a home loan modification, including a modification pursuant to HAMP (Making Home Affordable Program).  Plaintiff qualified for such modification and Suntrust representatives confirmed that would so qualify for a home loan modification pursuant to HAMP guidelines.

On or about October 10, 2011, Plaintiff followed up and spoke to Suntrust representative Resiha Allen who told Plaintiff she had the complete packet in her possession and Plaintiff need not do anything more but to check back every ten (10) days by telephone.

On or about October 20, 2011, Plaintiff phoned Suntrust again, despite the October 10th representation that her packet was complete, She was told of two (2) missing documents, which she immediately completed and faxed to Suntrust.

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

6

**Wrongful Denial.**

On or about October 26, 2011, Suntrust wrongfully denied Plaintiff's application for a HAMP modification based on a false assertion that she had not submitted all the documents requested. Plaintiff immediately called Suntrust but could not have a meaningful conversation with anyone there until November 9, 2011, when Plaintiff spoke to Marylou who surprisingly told her that Suntrust "actually had everything it needed for a loan modification consideration under HAMP guidelines."

Given the passage of time, Suntrust required Plaintiff to resubmit all documentation previously requested and provided, again. Plaintiff continued to update the requested documents and was told a decision on the modification would be made by late December 2011. Plaintiff's funds were completely depleted by December as she made the last mortgage payment she could make. No decision was forthcoming.

During January 2012, Plaintiff's single point of contact, Lauren Harris, again asked for documents which Suntrust already had in their possession. In her desperation, Plaintiff continued to submit and re-submit the requested documents. During her conversations with Suntrust in January 2012, Plaintiff was told she was "out of the system" and "back in the system" countless times; which made no sense to her. Plaintiff also had demanded of Suntrust to disclose the identity of the owner of her loan; however, Suntrust refused to do so.

After missing her first payment, in January 2012, Lauren Harris told Plaintiff "not to worry because Suntrust would add the missing payments to the back of the

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

7

loan."

**Second Wrongful Denial.**

In February 2012, Plaintiff received a denial letter from Suntrust stating that her "loan modification application was denied because she had not provided the requested documents", which was blatantly false. Around the same time Plaintiff also received a letter from Suntrust stating she was behind in payments, and offered help, by requesting the same documents Plaintiff already submitted on several occasion during the past 12 months.

Immediately after receiving these letters, Plaintiff contacted Lauren Harris who said the "denial letter was not in the system", and that Suntrust needed the same documents, listed in the February letter faxed again; further, she instructed Plaintiff "should disregard the denial letter." Ms. Harris told Plaintiff again that the *missing payments would be added to the back end of the loan.*

Thereafter, Plaintiff continued to submit requested documents and to call Suntrust on a weekly basis regarding the status of her modification request without any beneficial results.

In May 2012, Suntrust representatives told Plaintiff that her file had been "escalated and an answer regarding modification would be forthcoming." During this time, Plaintiff also received a letter from Suntrust informing her that her credit score had fallen some 100 points from its original level.

**Third Wrongful Denial.**

On or about June 14, 2012, after all the months Plaintiff had submitted documents for a HAMP loan modification, she was informed through a letter that she was denied for a HAMP loan modification because *"the investor does not participate in HAMP"*.   This representation was counterintuitive to Suntrust's previous representations.  Moreover, the Suntrust website directs borrowers to the Making Home Affordable Program ("HAMP") website and its applications and *Plaintiff had applied for a HAMP modification at Suntrust's suggestion.*

On or about June 28, 2012, a Ms. Simon from Suntrust told Plaintiff that the investor *"did not want to do a modification, even though Plaintiff qualified."* Ms. Simon suggested Plaintiff obtain a refinance (from someone other than Suntrust) despite the fact that her property had declined in value and she was now many months behind. Ms. Simon assured Plaintiff that Suntrust would not consider her for refinance for those reasons and that her credit score had declined.

On or about July 6, 2012, Plaintiff sent a Qualified Written Request to Suntrust, however in response, Suntrust sent Plaintiff a copy of a stranger's Promissory Note.

**Fourth Wrongful Denial.**

On or about July 6, 2012, Plaintiff received a written denial of Plaintiff's modification application stating she was denied because she was behind in her mortgage payments which was reflected as a "serious delinquency."  This was ironic because Plaintiff was told the missed payments would be added to the end of the loan,

and her financial hardship caused her to fall behind which is why she applied for a loan modification in the first place.

Thereafter, Suntrust threatened to proceed to foreclose on the Subject Property unless the loan was brought current. As a result, Plaintiff sought to reapply for modification and in November 2012, Plaintiff submitted a complete application along with supporting documents; but, despite her attempts to contact Suntrust, she did not receive a response.

During December, 2012, Plaintiff received a Notice of Default ("NOD") which was recorded in the county recorder's office.  Plaintiff called Suntrust, during that telephone conversation the representative indicated Suntrust would accept another loan modification application from Plaintiff.  Plaintiff obliged,  so applied and started the entire process over again.  As of the date of this application no response has been received from Suntrust.

At this time, Plaintiff has been unable to cure the default because of the substantial arrearages, which include unnecessary fees added to the loan balance and has been unable to negotiate a mortgage payment that she can afford. Plaintiff is in possession of the Subject Property; however, a Trustee's sale date is scheduled for **April 2, 2013 at 10:00 a.m.**

Plaintiff's claims are simple: when large financial institutions promise to modify eligible loans to prevent foreclosures and taxpaying homeowners live up to their end of the bargain, homeowners expect that promise to be kept, especially when those large

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
10

financial institutions are acting under the guidance of a federal program specifically targeted at preventing foreclosures.

Unbeknownst to Plaintiff, Defendants, acting as lenders, mortgage servicers, trustees, and/or beneficiaries, received, and continue to receive, a financial incentive on each loan modification application a borrower submits. Because of this type of incentive, Defendants benefit from allowing Plaintiff's modification request to drag on, rendering the financial documents submitted in support thereto to become stale; thus, requiring Plaintiff, and other similarly situated borrowers to restart the modification application process, rather than actually reviewing Plaintiff's application.

Defendant Suntrust wrongfully delayed Plaintiff's modification request due to its own ineffective and unreasonably slow processing system and the financial incentives it received by asking Plaintiff to submit numerous applications.

The foregoing acts and material omissions of the Defendants herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiff's notice and disclosure rights.

Defendants, as employers of the authorized representatives who had contact with Plaintiff, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

Defendants are corporate employers. As such, their officers, directors, and/or

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

Plaintiff is ready, willing, and able to enter into a loss mitigation program that is affordable for Plaintiff and more profitable to Defendants than a foreclosure of the Subject Property, and Plaintiff is ready, willing, and able to make such payments at the times required of her.

## A. Just Cause Exists to Stop Enjoin the Sale Because of Defendants' Violations of the Homeowner's Bill of Rights

Plaintiff has standing to bring this suit because she is a "borrower" under the deed of trust secured by the Subject Property.  Pursuant to *Civil Code* §2920.5, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through his or her mortgage servicer". (*Civil Code* §2920.5 (c)).

As alleged in the complaint, **Plaintiff has experienced a material change in her financial circumstances** since the last time Plaintiff submitted a complete application for a foreclosure prevention alternative. Plaintiff, through her attorney has documented and submitted these changes to Defendants, via facsimile, in a letter dated January 31, 2013. A true and correct copy of this letter to Defendants informing them of Plaintiffs' financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as **Exhibit "H"**.

Plaintiff's change in financial circumstances are a result of her increase in income. Defendant Suntrust is in possession of all material documents supporting such change. Pursuant to *Civil Code* §2923.6 Defendant is mandated to review Plaintiff's modification request for two (2) reasons: Plaintiff  was never fairly considered, and Plaintiff's income has changed and such information regarding the change has been submitted to Suntrust.

As set forth herein, pursuant to the provisions of Civil Code §2923.6, under the California Homeowner's Bill of Rights, if there has been a material change in the borrower's financial circumstances, and that change has been documented and submitted to the mortgage servicer, the mortgage servicer must evaluate the borrower's complete application. In addition, §2923.6 requires that *all foreclosure activity must cease while a review of the application is pending.*

Pursuant to the provisions of *Civil Code* §2923.6 and the Homeowner's Bill of Rights, if there has been a <u>material change</u> in the borrower's financial circumstances, and that change has been documented and submitted to the mortgage servicer, the mortgage servicer or lender is obligated to evaluate the borrower for a foreclosure alternative, including but not limited to a loan modification. In addition, §2923.6 requires that all foreclosure activity must cease once notice of this change has been given and a review of the new financial circumstances is evaluated. A true and correct copy of all relevant *Civil Code* sections under the Homeowner's Bill of Rights is attached and incorporated hereto as **Exhibit "A".**

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
13

According to this code section, Suntrust must not only review Plaintiff for a foreclosure alternative, but it may not continue foreclosure activity on the subject property until after the optional appeal of the written denial, as set forth in *Civil Code* §2923.6(c) (**Exhibit "A",** pp. 12-13).

Continuing with foreclosure proceedings of the Subject Property while Plaintiffs are under mandatory review is also a violation of *Bus. And Prof. Code* §17200, as an unlawful and unfair business practice. Pursuant to the provisions of *Civil Code* §2924g(c)(1)(A), a foreclosure sale may be properly postponed by order of a Court of competent jurisdiction, including this Court.

## B.   Defendants Lack Standing to Foreclose

Defendants lack standing to foreclose on the Subject Property for two reasons: 1) The 2006 Trust which purportedly received ownership of Plaintiff's loan in 2012 (See 2012 Corporation Assignment of Deed of Trust, Exhibit **"D"**) did not receive such ownership because the 2006 Trust closed by its own terms in 2006. As a result, the 2012 Corporation Assignment of Deed of Trust was of no effect. 2) The Wolf Firm which purports to be the Trustee on Plaintiff's loan was improperly substituted in as Trustee, such that no such substitution was accomplished and the Wolf Firm lacks standing to conduct any foreclosure proceedings.

In 2006, Plaintiff entered into a written loan agreement for a sum of $626,250.00 (the "Loan"), secured by the Subject Property through a Deed of Trust recorded April 4, 2006 (Exhibit **"B"**).

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
14

The Deed of Trust identified the Lender as "SunTrust Mortgage, Inc.", the Trustee as "Jackie Miller" and the Beneficiary as Mortgage Electronic Registration Systems, Inc. ("MERS").   It is alleged that MERS is prohibited from being such beneficiary and prohibited from transferring the beneficial interests in mortgage loans as provided in its operative rules (Exhibit **"C"**, ¶6).

Thereafter, on October 18, 2012, the Corporate Assignment of Deed of Trust (Exhibit **"D"**) was recorded against Plaintiff's property purportedly assigning the beneficial interest in Plaintiff's 2006 Deed of Trust to Defendant BAFC 2006 Trust. However, by its own rules and regulations, the BAFC 2006 Trust *closed in 2006*. The failure to transfer the Deed of Trust timely (prior to the closing of the BAFC 2006 Trust *in 2006*) results in the Note and Mortgage not being part of the Trust *res*, and as a result, collection efforts by Suntrust and/or BAFC 2006 are improper.

This purported Assignment claims to have been accomplished by MERS, *who by its own terms*, cannot transfer such beneficial interest. (Exhibit **"C"**, ¶6.)

On or about November 2012, a Notice of Default was recorded against Plaintiff's property (Exhibit **"E"**). However, this document is defective because it identifies "The Wolf Firm" as Trustee, who is a stranger to this transaction and obtained no power or authority to take such action.   A Substitution of Trustee (Exhibit"**F"**) was issued in 2013 which attempts to substitute The Wolf Firm as the Trustee under the deed of trust. However, this document is fatally flawed because it was signed by SunTrust Mortgage as "attorney in fact" for the 2006 Trust, but the 2006 Trust does not own Plaintiff's

Case No. 13 CV 0656

---

Deed of Trust, because it was not timely assigned to it, thus no such transfer took place on its behalf.   Therefore, The Wolf Firm is not the substituted trustee under the deed of trust secured by the Subject Property.

*Civil Code §2924(a)(6)* provides that foreclosing entities must have standing to foreclose. As alleged herein, the recorded documents demonstrate that Defendants lack such standing and any foreclosure based in these documents is defective and unlawful.

### C. <u>The Complaint and the Basis for Injunctive Relief</u>

Plaintiff seeks a Temporary Restraining Order or in the alternative a stay order on the grounds that Defendants' foreclosure on the Subject Property violates California *Civil Code* §§2923.6, 2924, California *Business and Professions Code* §17200, and other statutory and common law in effect.

As permitted by *Federal Rules of Civil Procedure* 65, Plaintiffs have alleged several clear and convincing causes of action in which Plaintiffs are likely to succeed on. Defendants' violations of *Civil Code* §2923.6 and fraudulent, unfair and unlawful business practices under *Business and Professions Code* §17200 are factually supported through evidence and testimony and will lead to a final ruling for Plaintiffs.

Defendants are unlawfully proceeding with a foreclosure sale of the Subject Property and unless and until Defendants are enjoined and restrained by order of this Court, Plaintiff will suffer irreparable harm. The sale of Plaintiff's property will cause immediate, great and irreparable injury to Plaintiff. The foreclosure sale of the Subject Property will reduce the value of the property and will eliminate Plaintiffs' interest in

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
16

the Subject Property. On these grounds alone, this Court may grant the TRO pursuant to *FRCP* 65.

Pursuant to *FRCP* 65, the court may grant injunctive relief in order to prevent "immediate and irreparable injury." *Fed. R. Civ. P.* 65(b)(1)(A). Temporary Restraining Order is vital to postpone and stop the imminent sale of the Subject Property. Pursuant to *Civil Code* §2924.15, *Civil Code* §2923.6 applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. Here, the Subject Property contains no more than four (4) dwelling units (a single family residence) and is Plaintiffs' principal residence. Plaintiffs squarely satisfy these requirements; therefore, pursuant to *Civil Code* §2923.6, <u>Plaintiff is entitled to an order postponing the scheduled foreclosure sale</u>.

Plaintiff does not have an adequate remedy at law for the harm threatened by Defendants' wrongful conduct. A foreclosure sale of the Subject Property will unjustly deprive Plaintiff of property rights and would reduce/eliminate any equity interest in the home.

### 1. <u>Violation(s) of California Civil Code §2923.6</u>

Plaintiff desperately requests this Court to issue a TRO because Plaintiff demonstrates that Defendant Suntrust failed to comply with the mandatory provisions of *Civil Code* §2923.6, and the postponement of the foreclosure sale is the proper remedy.

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
17

The intent of the California legislators in enacting *Civil Code* §2923.6 was to address the consequences of the subprime mortgage crisis leading to declining real property values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective of the *Code* was to make sure lenders, loan servicers, and their agents were communicating and working with borrowers in default to assess the borrowers' financial situation and discuss foreclosure alternatives **before** a foreclosure is started by recording a notice of default. <u>The intent of the legislature is clear and the requirements that it has imposed are by no means arbitrary.</u>

Defendants' failure to comply with *Civil Code* §2923.6 directly undermines the intent behind the statute. This failure to adhere to the statute renders it meaningless and, if not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless. As a result, Defendants are liable to Plaintiff for any and all statutory and/or actual damages which have resulted from their conduct.

*Civil Code* §2923.6(g) mandates the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, **unless there has been a material change in the borrower's financial circumstances** since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer. (Exhibit **"A"**, pg 12).   Plaintiffs have not been fairly evaluated for a foreclosure alternative and have experienced a "material change in their financial circumstances".

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
18

As alleged, Plaintiffs' income and expenses have materially changed since the last time Plaintiffs submitted a complete application for a foreclosure prevention alternative. Specifically, Suntrust never fairly evaluated or afforded Plaintiff a fair opportunity to be evaluated for a foreclosure prevention alternative, as alleged in the Complaint and set forth herein, and there has been a material change in Plaintiff's income, and that change has been documented and submitted to Defendants SunTrust Mortgage and The Wolf Firm via facsimile  Defendants have been notified of such changes. A true and correct copy of the January 31, 2013 letter to Defendants informing them of Plaintiff's financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as Exhibit **"H"**.

Accordingly, under *Civil Code* §2923.6, Suntrust must evaluate Plaintiff for a foreclosure alternative, including a loan modification.  Defendants may NOT continue with or conduct any foreclosure activity, while a review of the loan modification application is pending.

Plaintiff requests that this Court grant this application for a TRO because Plaintiff can show that Defendant Suntrust failed to satisfy the mandatory provisions of *Civil Code* §2923.6, and the postponement of the foreclosure sale is the only proper remedy.

a. <u>Improper Denial</u>

*Civil Code* §2923.6(f) states that following the denial of a first lien loan modification application, the mortgage servicer is obligated to send a written notice to the borrower identifying the **reasons for denial**, including the following:

Case No. 13 CV 0656

a. The amount of time from the date of the denial letter in which the borrower may request an appeal and instructions regarding how to appeal the denial;

b. If the denial was based on investor disallowance, the specific reasons for the investor disallowance;

c. If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the NPV and a statement that the borrower may, upon written request to the servicer, obtain ALL of the inputs used in the NPV calculation;

d. If applicable, a finding that the borrower was previously offered a loan modification and failed to successfully make payments under the terms of the modified loan; and

e. If applicable, a description of other foreclosure alternatives for which the borrower may
be eligible AND a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure alternative, information necessary for the borrower to complete that foreclosure alternative.

In this case, Defendants' denial letters sent to Plaintiff failed to meet the above requirements. The letter does not state specific reasons for the denial of Plaintiffs' request for loan modification and does not include the inputs used to calculate NPV.

Plaintiff alleges that if this denial was based on the investor's disallowance to provide Plaintiff with a loan modification, the denial letter should, but does not include the criteria for the investor guidelines in order to obtain a loan modification. Pursuant to California Civil Code §2923.6(f) (2), if a denial is based on the investor's disallowance, such denial letters must state the specific reasons for the investor disallowance.

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
20

Despite being put on notice of these facts, Defendants intend to continue with the scheduled foreclosure activity on the Subject Property and will hold a Trustee sale of the Subject Property that is currently scheduled for **April 2, 2013. This is a blatant violation of** *Civil Code* **§2923.6.**

Therefore, pursuant to the Homeowner's Bill of Rights, and specifically *Civil Code* §2923.6, the foreclosure sale date of the Subject Property must be **enjoined,** and Plaintiff must be evaluated for a foreclosure prevention alternative or a loan modification.

As a result of Defendants' wrongful acts and omissions, Plaintiff has been prejudiced by Defendants' acts and omissions. The foreclosure process instituted by Defendants must cease and Defendants must comply with the mandatory provisions under *Civil Code* §2923.6.

Plaintiff has good cause to stop the foreclosure sale, was forced to file a Complaint, and seek a court order enjoining Defendants' conduct and stop the imminent sale of a family home.

## 2. Violations of California Civil Code §2924

*Civil Code* §2924(a)(6) provides in pertinent part that "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust or the designated agent of the holder of the beneficial interest."

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
21

Essentially, §2924(a)(6) provides that Defendants may not engage in foreclosure procedures against Plaintiff's property unless they are a holder of the beneficial interest in the Deed of Trust, and the proper Trustee named under the recorded documents.

As fully set forth above and incorporated by reference herein, *Defendant is NEITHER* the holder of the beneficial interest *NOR* not the properly designated Trustee as identified in Plaintiff's recorded documents. Therefore, Defendants' actions violate *Civil Code* §2924, specifically §2924(a)(6), and foreclosure activity must not proceed. In addition, Plaintiff is entitled to all the rights and remedies set forth in the new statutory scheme, the Homeowner's Bill of Rights, for such violation.

### 3. <u>Violation of California Business and Professions Code §17200 *et seq.*</u>

Plaintiff pleas to this Court to issue a TRO based on conduct which clearly violates California *Business and Professions Code* §17200, as "unlawful, unfair and/or fraudulent business act or practices". Plaintiffs' §17200 claim is grounded on Defendants' violations of *Civil Code* §2923.6 and §2924, *et seq* and unfair business practices.

This Court has jurisdiction over this action pursuant to *Bus. and Prof. Code* §17200, *et seq.,* specifically *Bus. and Prof. Code* §17203, which provides that any person or entity who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the Court may make such orders or judgments, including the appointment of a receiver, as may be necessary, to prevent the use or employment by any person of any practice which constitutes unfair

competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and *Bus. and Prof. Code* §17204, which provides that actions for any relief pursuant to Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association or by any person acting for the interests of itself, their members, or the general public.

*Bus. and Prof. Code* §17200 also prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set forth herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with awareness of its effect, and was done to induce Plaintiff to pay the marked-up and/or unnecessary fees for default-related services.  Moreover, Defendants recorded foreclosure related documents into public records without the power or authority to do so.

Specifically, as fully set forth herein and in the Complaint, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties, and related matters, by, among other things:

a. Recording the Notice of Default, the Notice of Sale, and conducting a Trustee's sale without complying with *Civil Code* §2923.6, by failing to evaluate Plaintiffs' application, or affording Plaintiffs a fair opportunity to be evaluated for a loan modification, after a documented **material change of financial circumstances**;

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
23

b. Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

c. Misrepresenting the foreclosure status to Plaintiffs regarding the property; and

d. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs; account.

In addition, in the course and conduct of its loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and they failed to disclose the nature of the charges and fees assessed. Defendants concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiff believed she was obligated to pay the amounts specified in Defendants' correspondences relating to default-related services.

Plaintiff relied on a reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans; as a result, Plaintiff relied on Defendants' disclosures about the fees appearing on statements, reasonably believing the "Other Charges," "Other Fees," or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments. Defendants further conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by [borrowers'] Note and Security Instrument," or that they are "[i]n

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiff, she would have been aware of the mark-ups and unnecessary nature of the fees, and would have disputed these charges.

Furthermore, by offering loan modification assistance and leading borrowers to believe such assistance is being considered while the foreclosure process is underway is an irreparable injury to Plaintiff after Plaintiff has **relied on** Defendants' offers to modify their loan. This has prevented Plaintiff from pursuing other workout options, such as deed in lieu of foreclosure, short sale, and the like. In fact, the false promises and false statements of Defendants, and each of them, were designed to unfairly prejudice Plaintiff and profit from her loss.

These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions are contrary to public policy; as such, the California State legislature enacted the Homeowner's Bill of Rights, including *Civil Code* §2923.6, as an emergency act, so unlawful foreclosures could be avoided.

Defendants' acts and practices constitute "unfair" and "unlawful" business acts under *Bus. and Prof. Code* §17200, *et seq*., in said acts and practices offend public policy and are substantially injurious to Plaintiff. These unfair and unlawful acts and practices provide no utility, except hearty profits; clearly less utility to outweigh the substantial harm to Plaintiff.

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
25

Plaintiff alleges that these acts are a serious threat to Plaintiff, because they allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property, transfer title, and to cause the imminent eviction of Plaintiff from the home. Because of Defendants' illegal actions, Plaintiff will be forced out of the Subject Property, and such eviction will undoubtedly cause Plaintiff immediate and irreparable injury.

As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices, Plaintiffs have suffered ascertainable losses; therefore, Defendants must be enjoined from continuing such practices, pursuant to *Bus. and Prof. Code* §17203 & §17204.

**Standing**

Standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing under the UCL, a plaintiff must sufficiently allege that (1) she has lost "money or property" sufficient to constitute an "injury in fact" under Article III of the Constitution, and  (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Birdsong v. Apple, Inc.*, 590 F.3d 959-60 (9th Cir. 2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-56 (2008).

Under the UCL "[a]n injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing." … "injury in fact" …

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

26

[means] … "'an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" … "'Injury-in-fact is not Mount Everest. "The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege some specific, 'identifiable trifle' of injury".' " *Hale, supra*, 183 CA4th at 1381-84 (internal citations omitted.) The term "imminent" is defined as "ready to take place," "hanging threateningly over one's head," and "menacingly near." (Id. at 1384.)

Being at risk of foreclosure would constitute injury in fact. [See *Sullivan v. Wash. Mut. Bank, FA*, 2009 WL 3458300, at *4-5 (N. D. Cal. Oct.23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under § 17200); *Rabb v. BNC Mortgage, Inc.*, 2009 WL 3045812, at *2 (C.D.Cal. Sept. 21, 2009).

Plaintiff alleges that Defendants' actions have clouded her title, and by charging unnecessary default related fees have caused her to lose equity interest in the subject property. As discussed in the complaint, Plaintiff's losses derive from Defendants' collection of payments, adding improper charges to Plaintiff's balance, and unreasonably delaying Plaintiff's loan modification review caused Plaintiff to lose equity interest in the Subject Property. These injuries are monetary and may result in the loss of Plaintiff's home. Being charged for marked-up and unnecessary fees would constitute injury in fact. [See *Hale v. Sharp Healthcare* (2010) 183 CA4th 1373, 1383-

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
27

84 (uninsured patient's UCL claim against hospital and its owner adequately alleged standing where plaintiff alleged that she was promised services at regular rates but was charged grossly excessive rates.  Although plaintiff paid only $500 of her $14,448 bill; patient faced at least an imminent invasion or injury to a legally protected interest.)]

**Unlawful, Unfair or Fraudulent Conduct**

Under the UCL, there are three varieties of unfair competition—business acts or practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability," each offering "an independent basis for relief." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Furthermore, a claim under § 17200 is "derivative of some other illegal conduct or fraud committed by a defendant, and '[a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." *Id. Khoury*, 14 Cal. App. 4th at 619.

A business practice is "fraudulent" within the meaning of §17200 if "members" of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.* (1983)35 C3d 197, 211, 197 CR 783, 791; accor, *Kasky v. Nike, Inc.* (2002) 27 C4th 939, 119 CR2d 296; and *Prata v. Sup.Ct.* (2001) 91 CA4th 1128, 1144, 111 CR2d 293, 308.  Common law fraud requires proof of five elements; by contrast, under the *Children's Television* test, a plaintiff can prove a prima facie case that a business practice is "fraudulent" without having to prove intent, scienter, actual reliance, or damage.  All that is required is proof that "members of the public are likely

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
28

to be deceived." *Schnall v. Hertz Corp.* (2000) 78 CA4th 1144, 1167, 93 CR2d 439, 456-457; *People v. Orange County Charitable Servs.* (1999) 73 CA4th 1054, 1076, 87 CR2d 253, 268. If anything, the prohibition against "fraudulent" business is broad and it reaches practices that do not involve advertising. See *Allied Grape Growers v. Bronco wine Co.* (1988) 203 CA3d 432, 249 CR 872. And that involve no untrue statement. Here, Defendants publicly agreed to stop the practice of "dual tracking" and specifically stated to Plaintiffs that no foreclosure activity would ensue while they're under loan modification review.

## Defendants' Thoughtless March to Foreclosure on Plaintiff's Property is Sufficient to Establish Unfair and/or Unlawful Conduct.

"Unfair" conduct under Section 17200 has been commonly defined as conduct that "offends an established public policy or... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinc v. Superior Court,* 108 Cal. App. 4th 917, 939 (Cal. App. 2003). Here, Plaintiffs' claims support a finding that Defendant's activities were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff not to mention against public policy. Here, Defendants, induced Plaintiff to default on this loan and engaged in loan modification review leading her to believe she will obtain a monthly payment that is lower than the amount due at the time. However, Defendant Suntrust failed to adequately review Plaintiff's application and started foreclosing on the Subject Property prior to reaching a proper decision. Defendants also

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
29

engaged in "Dual-Tracking", a grossly unfair practice that they had specifically been reprimanded for and committed to halt during the recent national mortgage settlements.

Here, Defendants acted "unfairly" and "unlawfully" because initiating foreclosure activity, in direct violation to the Home Owners' Bill of Rights, and their express promises to Plaintiffs further reaffirm Plaintiffs' claims of unfair conduct under the UCL.

### III.   BALANCE OF HARMS

The harm Plaintiffs will suffer if the Subject Property is sold in foreclosure outweighs any harm to the Defendants.  If Plaintiffs succeed on their case, they will remain the owner of the property at issue.  If not, Defendants would be free to continue with their foreclosure proceedings and recoup any claimed losses.

A Plaintiff seeking injunctive relief are required to demonstrate that she will suffer immediate and irreparable injury due to the inadequacy of other legal remedies. *People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater* (1981), 118 Cal.App.3d 863. Irreparable harm is often related to an "inadequate legal remedy," where relief cannot be granted unless a party is injured in a way which cannot later be repaired. *Id* at 870-71. In "evaluating interim harm, the trial court compares the injury to Plaintiff in the absence of an injunction to the injury Defendant is likely to suffer if an injunction is issued." *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 633. The harm Plaintiff will suffer if the Subject

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
30

In addition, the threat of "irreparable harm" must be imminent, as opposed to a mere possibility of harm sometime in the future, in that the threat "must be supported by actual evidence that there is a realistic prospect that the party enjoined intends to engage in the prohibited activity." *Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069.

Furthermore, the Court in *Nichols v. Deutsche Bank Nat. Trust Co.* 2007 WL 4181111, at *3, held that **"the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."** Similarly, in *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1, the Court found that **"losing one's home through foreclosure is an irreparable injury."** Moreover, pursuant to *Civil Code* §3387, all real property is deemed "unique," so any injury/loss cannot be compensated in damages, and injunctive relief is therefore readily granted.

## IV.   THE PUBLIC INTEREST

Plaintiffs submit that public interest favors the granting of the requested relief. The public has an interest in the orderly administration of justice with respect to this transaction which will be defeated if the relief sought is not granted.  Public policy favors the proper adjudication of claims of predatory lending against homeowners. Additionally, public policy dictates that the Plaintiff should not be rendered homeless without a full adjudication of their case on the merits.

The foreclosure activity in California has adversely affected property values and resulted in less money for schools, public safety, and other public services. According

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
31

to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. As a direct, proximate, and foreseeable result of the unlawful business acts or practices of Defendants, Plaintiff and the general public have been injured, and Plaintiff is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profit, compensation, and benefit, which may have been obtained by Defendants as a result of such business acts or practices.

Currently there is an extremely high rate of foreclosures in Southern California real estate market.  As a result, foreclosures contribute to neighborhood blight and bring other property owners values down.  The foreclosure also foster crime as gangs and drug dealers move into the abandoned homes.  A foreclosure sale of Plaintiffs' home will add to these problems, which are not in the public's interest.

The California Legislature has found and declared "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution".   In addition, "These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided.  This foreclosure can and should be avoided.

## V. <u>NO BOND SHOULD BE REQUIRED</u>

In this case, to require a bond in any substantial amount is effectively to deny

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
32

Plaintiffs the requested relief. Defendants are already protected by their lien security interests in Plaintiffs' home, so additional security in the form of a bond should be unnecessary. Should this court find it proper to order an undertaking, Plaintiffs propose that the amount be equal to the monthly mortgage payments due under the note, payable on a monthly basis.

## VI.   CONCLUSION

As stated herein, Plaintiffs hereby plead to this court to stop the unlawful sale of their home. Plaintiffs have shown that the issuance of a Temporary Restraining Order is justified because of high likelihood of success on the merits, the irreparable harm, and the insignificance of any harm or benefit to Defendants. The issuance of TRO will also serve the public's interest in maintaining safe neighborhoods, avoiding further decline in property values and generation of property taxes for the city and county.

Dated: March 26, 2013         LAW OFFICES OF JOSEPH R. MANNING, JR.
                              A PROFESSIONAL CORPORATION

                              By:    /S/  Babak Hashemi, Esq.
                                    Joseph R. Manning, Jr., Esq.
                                    Babak Hashemi, Esq.
                                    Attorneys for Plaintiffs

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
33

## DECLARATION OF BABAK HASHEMI

I, Babak Hashemi declare as follows:

1. I am a resident of the County of Orange. I am over the age of 18.

2. I am of counsel to the Law Offices of Joseph R. Manning, Jr., APC and associate counsel of record in the above-referenced action.

3. I have personal knowledge to the facts herein, and if called as a witness, I would competently testify to their veracity in court.

4. On March 25, 2013, I met and conferred with counsel for Defendants pursuant to local rules in order to maintain status quo by requesting postponement of the scheduled foreclosure and initiating loan modification review procedures based on *California Civil Code* §2923.6.

5. The scheduled trustee date of the Subject Property remains active for April 2, 2013 and no foreclosure alternatives have been discussed between the parties.

6. This office provided written notice of this ex parte hearing to Defendants' Counsel on March 27, 2013. A true and correct copy of said notice is attached hereto as **Exhibit "I"**.

Executed on March 27, 2013, at Newport Beach, California.    I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

        /S/  *Babak Hashemi*
        Babak Hashemi, Esq.

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
34

## DECLARATION OF KAREN S. BITKER

I, KAREN S. BITKER, declare as follows:

### The Declarant/Plaintiff

1. I am a resident of the County of San Diego. I am over the age of 18. I am the Plaintiff in the above-entitled action. I have personal knowledge of the facts herein, and if called as a witness, I can and will competently testify to the following facts.

### The Property and the Loan

2. I am the owner of the property commonly known as **2018 Valley Road, Oceanside, CA 92056** ( "Property"). This has been my home for over 37 years and will remain my home for the remainder of my life.

3. The Property is, and at all relevant times has been, my primary residence.

4. I own the Property subject to a Deed of Trust recorded on April 4, 2006, with an initial loan amount of $626,250 which I was and am the "borrower" of. Attached hereto as Exhibit **"B"** is a true and correct copy of the Deed of Trust.

5. On August 14, 1995, a Trust Transfer Deed was executed, granting the Property to the M.K Bitker Living Trust dated August 9, 1995. I am the successor trustee of the M.K. Bitker Living Trust dated August 9, 1995.

### Foreclosure

6. As set forth in my Complaint and in this application, I performed dutifully under the Loan, as required, until late 2011 when, due to the downturn in the economy, I

suffered a significant financial setback. Thereafter, I made some of the monthly mortgage payments under the terms of the Loan, but was unable to make all the required payments.

7. In September 2011, I contacted Defendant Suntrust, the mortgage servicer, to inquire about a loan modification option. At this point, my credit score was very high and I was current on the payments. I continued to be current on my mortgage payments during the modification process until January 2012 when my reserve funds were depleted. The January 2012 payment was the first payment I missed.

8. On September 29, 2011, I submitted all the requested paperwork to apply for a modification, including a modification pursuant to HAMP. Suntrust's representatives told me to apply for this HAMP modification and that I qualified for such modification.

9. On October 10, 2011, I followed up and spoke to Suntrust representative Resiha Allen who told me that she had the complete packet and I needed to check back every ten (10) days. Approximately ten (10) days later, on or about October 20, 2011, I phoned Suntrust again and was told of two (2) missing documents, which I immediately completed and faxed to Suntrust.

10. On October 26, 2011, Suntrust wrongfully denied my application for a HAMP modification stating I had not submitted all the documents requested, but that was not true.

11. I immediately called Suntrust to fix this error, but did not have a meaningful

conversation until November 9, 2011, when I spoke to Marylou who told me that Suntrust actually had everything it needed for modification consideration. I continued to update the requested documents and was told a decision on my modification would be made by late December 2011. That turned out not to be true, and no decision was made. That December 2011 payment was the last payment I could afford to make without a modification.

12. In January 2012, my single point of contact was Lauren Harris who asked for documents which Suntrust already had in its possession, but I continued to submit and re-submit the requested documents. I was told I was "out of the system" and "back in the system" countless times. I asked the representative who the owner of my loan was but the representative refused to disclose the identity of the owner of my loan. I told Ms. Harris that I could not make the January 2012 mortgage payment and she told me not to worry because Suntrust would add the missing payments to the back of the loan which was a big relief to me. I continued to do everything possible to seek a loan modification.

13. In February 2012, I received a denial letter claiming I had not provided the requested documents, which again, was not true. I also received a letter stating that I was behind on my payments, and offering help, and also requesting the same documents I already submitted.

14. I contacted Lauren Harris again who said the denial letter was not in the system, that Suntrust needed the same documents faxed again and I should disregard the

denial letter. Ms. Harris told me again that the missing payments would be added to the back end of the loan. I continued to submit documents as requested and called Suntrust on a weekly basis but could not get any clear answers on the status of my modification request.

15. In May 2012, Suntrust representatives told me that my file had been "escalated" and I would soon receive a decision on my loan modification request. I also received a letter from Suntrust that my credit score had fallen 158 points from its original level.

16. I continued to supply documents which I had previously faxed. On June 14, 2012, after months of submitting documents for a HAMP modification, I was wrongfully denied a HAMP modification because Suntrust indicated "the investor does not participate in HAMP" even though the Suntrust website directs borrowers like me to the Making Home Affordable ("HAMP") website on its applications and I had applied for a HAMP modification at *Suntrust's suggestion*.

17. On June 28, 2012, Ms. Simon of Suntrust told me that even though I qualified for a HAMP modification, the investor "did not want to do a modification." Ms. Simon suggested that I obtain a refinance but she told me that unfortunately Suntrust would not consider me for refinance because I was behind in my payments and because my credit score had declined.

18. On July 6, 2012, I sent a Qualified Written Request to Suntrust, however in response, Suntrust sent me copy of a stranger's Promissory Note.

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

39

19. Also on July 6, 2012, Suntrust denied my modification request in writing in large part because I was behind in my mortgage payments which was reflected as a "serious delinquency." This did not seem right to me because I had been told the missed payments would be added to the end of the loan, and my financial hardship caused me to fall behind which is why I requested a loan modification in the first place. After that, Suntrust threatened foreclosure, and in October 2012, I submitted a new application with the requested documents and called Suntrust and was told I would get a decision in 30 days, but I never received a decision and never received a call back.

20. In December, 2012, I received a Notice of Default and I immediately called Suntrust and the representative told me they would accept my application for loan modification and I so applied. I never received a response to that request and instead was simply "dual tracked" toward foreclosure. The sale date of my home is set for **April 2, 2013**.

21. I reasonably believe that I have never been fairly evaluated for a loan modification option and have not been given a good faith opportunity to avoid foreclosure proceedings. I base this on the fact that I was told to apply for a HAMP modification, then later denied because the investor did not participate in that program, and declined again because I was delinquent in my mortgage payments which was the whole reason I was seeking modification in the first place.

22. In addition, my financial circumstances have materially changed as my income

has increased since the last time I submitted an application for a foreclosure prevention alternative.

23. On January 31, 2013, my attorney faxed a letter, on my behalf, to all Defendants, notifying them of the change in my financial circumstances but there has been no response to that letter. (Exhibit **"H"**).

24. Based on these facts, the provisions of the California Homeowner's Bill of Rights mandates that Defendant Suntrust review me for a modification and I shall have at least thirty (30) days from any written denial to appeal such denial. In addition, the Homeowner's Bill of Rights specifically states that no foreclosure sale will take place during such review.

25. I am still trying to save my home of 37 years and if given due consideration I believe I could qualify for a foreclosure alternative now.

## Defendants Do Not Have Standing to Foreclose

26. My Deed of Trust (Exhibit **"B"**) identifies the Lender as "SunTrust Mortgage, Inc.", the Trustee as "Jackie Miller" and the Beneficiary as Mortgage Electronic Registration Systems, Inc. ("MERS").

27. Attached as Exhibit **"D"** is a true and correct copy of a "Corporate Assignment of Deed of Trust", recorded against my property purportedly assigning the beneficial interest in my 2006 Deed of Trust to Defendant BAFC 2006 Trust. However, by its own rules and regulations, the BAFC 2006 Trust closed in 2006. The failure to transfer the Deed of Trust timely (prior to the closing of the BAFC 2006 Trust)

results in the Note and Mortgage not being part of the Trust *res*, and as a result, collection efforts by Suntrust and/or BAFC 2006 are improper. In addition, this purported Assignment claims to have been accomplished by MERS, who by its own terms, is prohibited from transferring such beneficial interest (Exht. **"C"**; ¶6).

28. On November 2012, the Notice of Default was recorded against my property. A true and correct copy of that Notice of Default is attached as Exhibit **"F"**. However, this document is defective because it identifies "The Wolf Firm" as Trustee, who is a stranger to this transaction and has not authority or power to foreclose.

29. Recently, I received the "Substitution of Trustee" document in the mail.  Attached as Exhibit **"F"** is a true and correct copy of the defective Substitution of Trustee. That document purports to change the Trustee to "The Wolf Firm" and was signed by Suntrust as attorney in fact for the 2006 Trust that purported owns my loan. However, as set forth in the preceding paragraphs above, the "Corporation Assignment Deed of Trust" which supposedly transferred my loan to the 2006 Trust was signed and recorded in 2012 which was 6 years after the 2006 Trust closed so no such transfer took place.

30. Based on the recorded documents, I have a good faith belief that The Wolf Firm, as the purported Trustee on the Deed of Trust, does not have the legal right to conduct foreclosure proceedings against my home because it was a stranger to my loan when it recorded the Notice of Default against my property, and the

Substitution of Trustee document failed to properly substitute the Wolf Firm in as Trustee.

## The Impending Trustee Sale

31. There is a Trustee's sale set for **April 2, 2013**, for the sale of the Property.   A true and correct copy of the Notice of Trustee's Sale is attached as Exhibit **"G"**.

## The Threatened Irreparable Harm

32. The loss of my property would be devastating under any circumstances but particularly so without first being duly and properly considered for options to avoid foreclosure as contemplated by the consumer protection legislation, known as the "Homeowner's Bill of Rights," enacted in the State of California, in response to the present housing crisis.

Executed on March 27, 2013, in the City of Oceanside, State of California.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

*Karen S. Bitker*

Karen S. Bitker

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "A"

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**



1 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2920.5 (2013)*

**First of 2 versions of this section**

**§ 2920.5.  (First of two) Definitions**

For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c)

(1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or

Cal Civ Code § 2920.5

through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

**HISTORY:**

Added Stats 2012 ch 86 § 2 (AB 278), effective January 1, 2013.

**NOTES:**

**Note**

Stats 2012 ch 86 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

**Hierarchy Notes:**



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.4 (2013)*

**First of 2 versions of this section**

**§ 2923.4. (First of two) Purpose of Act; Loss mitigation options; Construction**

(a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.

(b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

**HISTORY:**

Added Stats 2012 ch 86 § 3 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**



3 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.5 (2013)*

First of 3 versions of this section

§ 2923.5. (First of three; Repealed January 1, 2018) Notice of default, grace period; Contact to assess borrower's financial situation; Due diligence requirement; Discussion of options to avoid foreclosure; Applicability

(a)

(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that

Cal Civ Code § 2923.5

    **(C)** A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

    **(D)** The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

    **(f)** This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

    **(g)** This section shall apply only to entities described in subdivision (b) of Section 2924.18.

    **(h)** This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

    Added Stats 2008 ch 69 § 2 (SB 1137), effective July 8, 2008, operative September 6, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 1 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 4 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 4 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

    For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (Second of two).


**Amendments:**


**2009 Amendment:**

    (1) Substituted "initial contact" for "contact" in subd (a)(1); (2) amended subd (b) by substituting (a) "declaration that" for "declaration from"; (b) "agent has" for "agent that it has"; (c) "has tried" for "tried"; and (d) "that no contact was required pursuant to subdivision (h)" for "the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent"; (3) amended the first sentence of subd (f) by adding (a) ", with consent given in writing,"; and (b) "the borrowers financial situation and"; (4) substituted subd (h)(3) for former subd (h)(3) which read: "(3) The borrower has filed for bankruptcy, and the proceedings have not been finalized."; (5) amended the first sentence of subd (i) by substituting (a) "mortgages or deeds of trust recorded" for "loans made"; and (b) "owner-occupied residential real property containing no more than four dwelling units" for "residential real property and are for owner-occupied residences"; and (6) added "as indicated to the lender in loan documents" in the second sentence of subd (i).


**2012 Amendment:**

    (1) Amended the introductory clause of subd (a)(1) by adding (a) "mortgage servicer,"; and (b) "both of the following:"; (2) added subdivision designation (a)(1)(A); (3) amended subd (a)(1)(A) by (a) adding "Either"; and (b) substituting "subdivision (e)" for "subdivision (g)"; (4) added subds (a)(1)(B) and (g); (5) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" wherever it appears in subds (a)(2), (b), (d), and (e); (6) substituted "recorded" for "filed" in subd (b) and in the first sentence of the introductory paragraph of subd (e); (7)

Cal Civ Code § 2923.5

substituted "because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5" for "pursuant to subdivision (h)" in subd (b); (8) deleted former subd (c) which read: "(c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made."; (9) redesignated former subds (d), (f), (g), (i), and (j) to be subds (c)-(f), and (h); (10) substituted "mortgage servicer's" for "mortgagee's, beneficiary's, or authorized agent's" in subd (e); (11) deleted former subd (e) which read: "(e) For purposes of this section, a 'borrower' shall include a mortgagor or trustor."; (12) substituted "borrower's" for "borrowers" in the first sentence of subd (d); (13) deleted former subd (h) which read: "(h) Subdivisions (a), (c), and (g) shall not apply if any of the following occurs: (1) The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent. (2) The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries. (3) A case has been filed by the borrower under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."; (14) substituted subd (f) for former subd (f) which read: "This section shall apply only to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units. For purposes of this subdivision, 'owner-occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents"; and (15) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (h). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

### Note

Stats 2008 ch 69 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007. In 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

(b) High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance, the number of completed California foreclosure sales in 2007 increased almost threefold from 1,902 in the first quarter to 5,574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.

(c) Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

Cal Civ Code § 2923.5

(d) It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

(e) According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternatives to help them avoid foreclosure.

(f) As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

(g) This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

SEC. 7. Nothing in this act is intended to affect any local just-cause eviction ordinance. This act does not, and shall not be construed to, affect the authority of a public entity that otherwise exists to regulate or monitor the basis for eviction.

SEC. 8. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

## Law Review Articles:

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

## Annotations:

Preemption Issues Arising Under Home Owners' Loan Act of 1933, *12 U.S.C.A. §§ 1461* et seq. *13 ALR Fed 2d 161.*

### Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

## LexisNexis 50 State Surveys, Legislation & Regulations

 **LexisNexis®**

6 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.55 (2013)*

**First of 2 versions of this section**

**§ 2923.55.  (First of two; Repealed January 1, 2018) Recording of notice of default; Conditions; Information in writing to borrower required; "Due diligence"; Applicability**

(a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b)

(1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be

Cal Civ Code § 2923.55

entitled to certain protections under the federal Servicemembers Civil Relief Act *(50 U.S.C. Sec. 501* et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers,

Cal Civ Code § 2923.55

provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 6 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Former Sections:**

Former CC § 2923.55, relating to specified conditions for which *CC § 2923.52* is inapplicable, was added Stats 2009-2010 2d Ex Sess ch 4 § 6 (SB 7XX), effective May 21, 2009, and ch 5 § 6 (AB 7XX), effective May 21, 2009, and repealed January 1, 2011, by its own terms.

 LexisNexis®

10 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.6 (2013)*

**First of 3 versions of this section**

**§ 2923.6.  (First of three; Repealed January 1, 2018) Legislative findings and declarations; Loan modification or workout plan; Conditions for recording notice of default or sale, or conducting trustee's sale; Denial of application**

(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

Cal Civ Code § 2923.6

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this

Cal Civ Code § 2923.6

section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

## HISTORY:

Added Stats 2008 ch 69 § 3 (SB 1137), effective July 8, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 2 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 7 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 7 (SB 900), effective January 1, 2013, repealed January 1, 2018.

## NOTES:

### Editor's Notes

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (Second of two).

### Amendments:

### 2009 Amendment:

Amended the introductory clause of subd (a) by (1) adding "or to all investors under a pooling and servicing agreement,"; (2) substituting "party in the loan pool or investor under a polling and servicing agreement" for "parties"; and (3) adding "to the loan pool or investors in the pooling and servicing agreement".

### 2012 Amendment:

(1) Amended the introductory clause of subd (a) by (a) adding "that mortgage"; (b) substituting "pooling" for "polling" after "investor under a"; and (c) adding "mortgage" before "servicer acts in"; (2) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" in subd (b); (3) added subds (c)-(j); (4) redesignated former subd (c) to be subd (k); and (5) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (k). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

### Note

Stats 2008 ch 69 provides:



13 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.7 (2013)*

**First of 2 versions of this section**

**§ 2923.7.  (First of two) Responsibilities of single point of contact; Applicability**

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

Cal Civ Code § 2923.7

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g)

(1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with *Section 50000*) *of the Financial Code*, or a person licensed pursuant to Part 1 (commencing with *Section 10000*) *of Division 4 of the Business and Professions Code*, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

**HISTORY:**

Added Stats 2012 ch 86 § 9 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

1 of 1 DOCUMENT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924 (2013)*

**§ 2924.  Transfer as security deemed mortgage or pledge; Exercise of power of sale; No liability for good faith error; Recital of acts as prima facie evidence; Privileged communications; Rebuttable presumption**

(a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

Cal Civ Code § 2924

**(B)** A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

**(C)** A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

**(D)** If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

**(3)** Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

**(4)** Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

**(5)** Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

**(6)** No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

**(b)** In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

**(c)** A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

**(d)** All of the following shall constitute privileged communications pursuant to Section 47:

**(1)** The mailing, publication, and delivery of notices as required by this section.

**(2)** Performance of the procedures set forth in this article.

**(3)** Performance of the functions and procedures set forth in this article if those functions and procedures are

Cal Civ Code § 2924

necessary to carry out the duties described in *Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure*.

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

**HISTORY:**

Added Stats 2009-2010 2d Ex Sess ch 4 § 8 (SB 7XX), effective May 21, 2009, operative January 1, 2011. Amended Stats 2010 ch 180 § 1 (SB 1221), effective January 1, 2011, operative January 1, 2011; Stats 2012 ch 86 § 10 (AB 278), effective January 1, 2013, ch 87 § 10 (SB 900), effective January 1, 2013, ch 556 § 2.5 (AB 1599), effective January 1, 2013.

**NOTES:**

**Former Sections:**

Former CC 2924, similar to the present section, was added Stats 2009-2010 2d Ex Sess ch 5 § 8 (AB 7XX), effective May 21, 2009, operative January 1, 2011, amended Stats 2010 ch 180 § 2 (SB 1221), effective January 1, 2011, operative January 1, 2011, and repealed Stats 2012 ch 86 § 11 (AB 278), effective January 1, 2013, ch 87 § 11 (SB 900), effective January 1, 2013, and ch 556 § 3 (AB 1599), effective January 1, 2013.

Former § 2924, similar to the present section, was enacted 1872, amended Code Amdts 1873-74 ch 612 § 256; Stats 1917 ch 204 § 1; Stats 1923 ch 374 § 1; Stats 1931 ch 764 § 1; Stats 1933 ch 642 § 1, reenacted Stats 1935 ch 650 § 1, amended Stats 1939 ch 983 § 1; Stats 1959 ch 1890 § 1; Stats 1972 ch 1056 § 1; Stats 1973 ch 817 § 1, operative July 1, 1974; Stats 1981 ch 427 § 1; Stats 1990 ch 657 § 1; Stats 1993 ch 686 § 2; Stats 1995 ch 752 § 1; Stats 1996 ch 483 § 1; Stats 1999 ch 974 § 8; Stats 2000 ch 636 § 6; Stats 2006 ch 575 § 4, effective January 1, 2007; Stats 2009-2010 2d Ex Sess ch 4 § 7, effective May 21, 2009, ch 5 § 7, effective May 21, 2009, repealed January 1, 2011, and repealed January 1, 2011, by its own terms.

**Amendments:**

**2010 Amendment:**

Added (1) "Except as provided in paragraph (4)," in subd (a)(3); and (2) subd (a)(4). (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605*.)

**2012 Amendment:**

(1) Amended subd (a)(4) by substituting (a) "record" for "file"; and (b) "recording" for "filing"; (2) added subds (a)(5) and (a)(6); and (3) substituted subd (f) for former subd (f) which read: "(f) This section shall become operative on

Cal Civ Code § 2924

January 1, 2011." (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605*.)

**Historical Derivation:**

    (a) *CC § 2924b*, as added Stats 1933 ch 642 § 2. Reenacted by Stats 1935 ch 650 § 2, Stats 1939 ch 983 § 2, Stats 1951 ch 417 § 2, Stats 1957 ch 1865 § 11.

    (b) Field's Draft NY CC § 1610.

**Note**

    Stats 1990 ch 657 provides:

    SEC. 3. It is the intent of the Legislature in enacting this act to supersede the holding in *Anderson v. Heart Federal Savings, 208 Cal. App. 3d 202,* to the extent that decision restricted the ability of mortgagees and beneficiaries under trust deeds to demand payment of all amounts in default under the terms of an obligation secured by a mortgage or trust deed as a condition to reinstatement of the obligation and avoidance of a sale of the security property to satisfy the obligation.

    Stats 2009-2010 2d Ex Sess ch 4 provides:

    SECTION 1.  This act shall be known as the California Foreclosure Prevention Act.

    SEC. 2.  The Legislature finds and declares all of the following:

    (a) California is facing an unprecedented threat to its state and local economies due to skyrocketing residential property foreclosure rates in California. Those high foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise.

    (b) It is essential to the economic health of California for the state to ameliorate the deleterious effects that will result from the continued high rate of foreclosure of residential properties by modifying the foreclosure process to provide additional time for borrowers to work out loan modifications while providing an exemption for mortgage loan servicers that have implemented a comprehensive loan modification program. This change in accessing the state's foreclosure process is essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market if the foreclosure may be avoided through a loan modification. Those additional foreclosures could further destabilize the housing market with significant, corresponding deleterious effects on the state and local economies.

**Law Review Articles:**

    Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

**Cross References:**

    Mode of recording instruments affecting real property: *CC §§ 1169* et seq.



15 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.9 (2013)*

**First of 2 versions of this section**

**§ 2924.9.  (First of two; Repealed January 1, 2018) Written communication to borrower required after mortgage servicer recorded notice of default pursuant to Section 2924**

(a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

Cal Civ Code § 2924.9

**(d)** This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 12 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two)

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



16 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.10 (2013)*

**First of 2 versions of this section**

**§ 2924.10. (First of two; Repealed January 1, 2018) Acknowledgment of receipt of loan modification application; Responsibilities of mortgage servicer**

(a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

Cal Civ Code § 2924.10

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 13 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



18 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.11 (2013)*

**First of 4 versions of this section**

**§ 2924.11.  (First of four; Repealed January 1, 2018)  Approval of foreclosure prevention alternative;  Recording notice of default or conducting a trustee's sale;  Prohibited acts;  Rescission or cancellation;  Fees;  Subsequent mortgage servicer**

(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) If a foreclosure prevention alternative *is* approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

Cal Civ Code § 2924.11

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 14 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.12 (2013)*

**First of 4 versions of this section**

**§ 2924.12.  (First of four; Repealed January 1, 2018) Actions concerning trustee's deed upon sale; Injunctive relief; Liability; Damages; Violations; Attorney's fees and costs**


   **(a)**

      (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

      (2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

      (b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court

Cal Civ Code § 2924.12

may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

## HISTORY:

Added Stats 2012 ch 86 § 16 (AB 278), effective January 1, 2013, repealed January 1, 2018.

## NOTES:

### Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

### Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



25 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

## GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.15 (2013)*

First of 4 versions of this section

**§ 2924.15.  (First of four; Repealed January 1, 2018) Applicability of specified code sections to first lien mortgages or deeds of trust secured by owner-occupied residential real property containing no more than four dwelling units**

(a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 18 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**



29 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.17 (2013)*

**First of 2 versions of this section**

**§ 2924.17. (First of two) Recording or filing of certain documents; Review of evidence to substantiate borrower's default and right to foreclose; Uncorrected violations; Civil penalties**

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in *Section 17204 of the Business and Professions Code*, or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these

Cal Civ Code § 2924.17

entities. This subdivision shall be inoperative on January 1, 2018.

**HISTORY:**

Added Stats 2012 ch 86 § 20 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



31 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.18 (2013)*

First of 2 versions of this section

**§ 2924.18. (First of two; Repealed January 1, 2018) Recording notice of default, notice of sale, or conducting a trustee's sale; Applicability of section to depository institutions and specified licensed persons that foreclosed on residential properties containing no more than four dwelling units; Notifications; Subsequent mortgage servicer**

(a)

(1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

(2) If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

Cal Civ Code § 2924.18                                                    Page 2

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with *Section 50000) of the Financial Code*, or a person licensed pursuant to Part 1 (commencing with *Section 10000) of Division 4 of the Business and Professions Code*, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 21 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

 LexisNexis®

33 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.19 (2013)*

**First of 2 versions of this section**

**§ 2924.19.  (First of two; Repealed January 1, 2018) Actions concerning trustee's deed; Injunctive relief; Liability; Damages; Violations; Attorney's fees and costs**

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or

statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17 or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 22 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



35 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.20 (2013)*

First of 2 versions of this section

## § 2924.20.  (First of two) Adoption of regulations; Enforcement

Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

HISTORY:

Added Stats 2012 ch 86 § 23 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

Hierarchy Notes:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "B"

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
44

**18869**

**DOC # 2006-0232285**

APR 04, 2006    4:59 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 51.00
PAGES: 16    DA: 1

**2006-0232285**

Recording Requested By:

~~SUNTRUST MORTGAGE, INC.~~
*[Company Name]*
**FINANCIAL TITLE COMPANY**
And When Recorded Mail To:

SUNTRUST MORTGAGE, INC.
*[Company Name]*

RVW 5093
*[Name of Natural Person]*

1001 SEMMES AVENUE
*[Street Address]*

RICHMOND, VIRGINIA 23224
*[City, State  Zip Code]*

233705-381
165-074-27

*[Space Above This Line For Recording Data]*

Loan No.: 0144760162

# DEED OF TRUST

MIN: 100010401447601622

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated March 28, 2006, together with all Riders to this document.

**(B)** "**Borrower**" is KAREN S BITKER, A WIDOW. Borrower is the trustor under this Security Instrument.

**(C)** "**Lender**" is SUNTRUST MORTGAGE, INC.. Lender is a corporation organized and existing under the laws of THE COMMONWEALTH OF VIRGINIA. Lender's address is 901 SEMMES AVENUE, RICHMOND, VA 23224.

**(D)** "**Trustee**" is JACKIE MILLER.

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 1 of 14

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

**18870**

(F)     **"Note"** means the promissory note signed by Borrower and dated **March 28, 2006.** The Note states that Borrower owes Lender **Six Hundred Twenty Six Thousand Two Hundred Fifty and 00/100ths** Dollars (U.S. **$626,250.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2036.

(G)     **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)     **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)     **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

(J)     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)     **"Escrow Items"** means those items that are described in Section 3.

(N)     **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)     **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)     **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

+ 0 1 4 4 7 6 0 1 6 2 + 0 0 A D + 2 + 1 4

18871

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SAN DIEGO:

*[Type of Recording Jurisdiction]*        *[Name of Recording Jurisdiction]*

**SEE ATTACHED SCHEDULE A**

Assessor's Identification Number:  165-074-27

which currently has the address of **2018 VALLEY ROAD**

*[Street]*

**OCEANSIDE,**                    **California 92056**                                    ("Property Address"):

*[City]*                              *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.



18872

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 14
MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

18873

a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



+ 0 1 4 4 7 6 0 1 6 2 + 0 0 A D + 5 + 1 4

18874

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may

**18875**

disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

*0 1 4 4 7 6 0 1 6 2 * 0 0 A D * 7 * 1 4

18876

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 8 of 14
MERS Modified Form 3005 01/01
1430ICA 08/00
©2000, The Compliance Source, Inc.

+01447601 62+00AD+8+14

18877

"Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 9 of 14

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

+ 0 1 4 4 7 6 0 1 6 2 + 0 0 A D + 9 + 1 4

18878

Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable

18879

Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 11 of 14
MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.



18880

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



* 0 1 4 4 7 6 0 1 6 2 + 0 0 A D + 1 2 + 1 4

18881

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                                       -Borrower
                                          **KAREN S BITKER**                            [Printed Name]

_____          _____ (Seal)
                                                                                       -Borrower
                                                                                       [Printed Name]

                                          _____ (Seal)
                                                                                       -Borrower
                                                                                       [Printed Name]

                                          _____ (Seal)
                                                                                       -Borrower
                                                                                       [Printed Name]

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
----THE COMPLIANCE SOURCE, INC.----                                                             14301CA 08/00
www.compliancesource.com                        **Page 13 of 14**                               © 2000, The Compliance Source, Inc.



18882

State of California                    §
                                       §
County of **SAN DIEGO**                §

On March 30, 2006, before me, Ashley Zeiss, Notary Public *[name and title of officer]* personally appeared **KAREN S BITKER**, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Ashley Zeiss_____ (Seal)



## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          Date:_____
(Trustee)

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 14 of 14                              1401CA 08/00
www.compliancesource.com                                                          ©2000, The Compliance Source, Inc.



18883

15

**Exhibit "A"**

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 22 of Henie Hills Estates, in the City of Oceanside, County of San Diego, State of California, according to Map thereof No. 7829, filed in the Office of the County Recorder of San Diego County on December 21, 1973



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "C"

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

45



**TERMS AND CONDITIONS**

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.    The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.   The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member  ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

VC10052000VA

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1595 Spring Hill Road, Suite 310, Vienna, Virginia, 22182.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "D"

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
46

DOC # 2012-0639516

Recording Requested By:
SUNTRUST MORTGAGE, INC.

When Recorded Return To:

Shartesha Otey
SUNTRUST MORTGAGE, INC.
1001 SEMMES AVENUE
RVW 5303
RICHMOND, VA 23224

OCT 18, 2012     9:39 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        21.00
                                         DA:      1
11084      PAGES:      2

## CORPORATE ASSIGNMENT OF DEED OF TRUST

San Diego, California
SELLER'S SERVICING #:0144760162 "BITKER"

MERS #: 100010401447601622  SIS #: 1-888-679-6377

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE FOR SUNTRUST MORTGAGE, INC AT 1901 E VOORHEES STREET, SUITE C , DANVILLE, IL 61834 hereby grants, assigns and transfers to U S. BANK NATIONAL ASSOCIATION AS TRUSTEE OF BAFC 2006-5 at 9062 OLD ANNAPOLIS ROAD, COLUMBIA, MD 21045 all beneficial interest under that certain Deed of Trust dated 03/28/2006 , in the amount of $628,250.00, executed by KAREN S BITKER, A WIDOW to SUNTRUST MORTGAGE, INC and Recorded: 04/04/2006 in Book/Reel/Liber: N/A Page/Folio: 16869 as Instrument No.: 2006-0232285 in the County of San Diego, State of California.

   Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE FOR SUNTRUST MORTGAGE, INC AT 1901 E VOORHEES STREET, SUITE C , DANVILLE, IL 61834
On  10/1/12

Sandra Lancaster
Vice President

"CRW*CRWSUNT*09/29/2012 11 31 17 AM* SUNT088SUNTA00000000000000001486520* CASAN D*0144760162 CASTATE_TRUST_ASSIGN_ASSN *SG1*SO1SUNT*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

11085

STATE OF Virginia
COUNTY OF Richmond (City)

On _10-1-2012_ , before me, _Sherod Owens_ , a Notary Public in and for Richmond (City) in the State of Virginia, personally appeared _Sandra Lancaster VP_ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Sherod Owens_
Notary Expires: 4/30/2016

(This area for notarial seal)

SHERROD OWENS
NOTARY
PUBLIC
REG. #7518591
MY COMMISSION
EXPIRES
4/30/2016
COMMONWEALTH OF VIRGINIA

*CRWFORMSUNT*09/28/2012 11 31 17 AM* SUNT00SUNTA00000000000000001486820* CABAN 0* 0144760162 CASTATE_TRUST_ASSIGN_ASSN *601*601SUNT*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "E"

DOC # 2012-0749646

RECORDING REQUESTED BY:
First American Title Insurance Company

NOV 30, 2012    8:00 AM    3789
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:         30.00
                                    DA:        1

WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200
(949) 608-0130 (Foreclosure Fax No.)

PAGES:    5

Trustee Sale No. 12-3418-11    Title Order No.. 7530207

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

**This amount is $50,358.33 as of 11/29/2012, and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

T.S. No. 12-3418-11   Title Order No.

which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of
payments in order to cure your default; or both (1) and (2).

3790

Following the expiration of the time period referred to in the first paragraph of this notice, unless
the obligation being foreclosed upon or a separate written agreement between you and your
creditor permits a longer period, you have only the legal right to stop the sale of your property by
paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact:

> **U.S. Bank National Association as trustee of BAFC
> 2006-5**
> c/o The Wolf Firm, A Law Corporation
> 2955 Main Street, 2nd Floor
> Irvine, California 92614
> Attn: Foreclosure Department Phone: (949) 720-9200  /
> Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may
have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may
offer your property for sale, provided the sale is concluded prior to the conclusion of the
foreclosure.

# REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:  THE WOLF FIRM, A LAW CORPORATION** is
the duly appointed Trustee, Substituted Trustee, or acting as agent for the beneficiary under a
Deed of Trust dated **3/28/2006**, executed by **KAREN S. BITKER, A WIDOW**, as Trustor(s), to
secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS), AS A NOMINEE FOR SUNTRUST MORTGAGE, INC., A
CORPORATION**, as beneficiary, recorded **4/4/2006**, as Instrument No. **2006-0232285** of
Official Records in the Office of the Recorder of San Diego County, California, **As more fully
described on said Deed of Trust.**

Including the note(s) for the sum of **$626,250.00**; that the beneficial interest under such Deed of
Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of,
and default in,  the obligations for which such Deed of Trust is security has occurred in that
payment has not been made of:

**The full installment due on 12/1/2011 and all subsequent payments, together with any late
charges, delinquent taxes, insurance premiums, impounds and advances; senior liens and
encumbrances which are delinquent or become delinquent and any attorney's fees and**

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No.12-3418-11   Title Order No.

court costs arising from the beneficiary's protection of its security must be cured as a condition of reinstatement.

**3791**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

"A copy of California Civil Code Section 2923.5 (b) declaration is attached hereto and incorporated herein by reference."

Dated: 11/29/2012

THE WOLF FIRM, A LAW CORPORATION, AS AGENT FOR THE BENEFICIARY BY: FIRST AMERICAN TITLE COMPANY, AS AGENT

By: _____

Marie Cruz,

**The Wolf Firm**, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT A

SEE ATTACHED
DECLARATION

3



**SunTrust Mortgage, Inc.**
Post Office Box 27767
Richmond, VA 23261-7767
Toll Free 1.800.443.1032

3792

**EXHIBIT "A"**
**Declaration Per CA Civil Code Section 2923.5**

The undersigned officer or custodian of records for SunTrust Mortgage, Inc.
does hereby declare as follows:

That Servicer is the Beneficiary or acting as agent of the Beneficiary who
is a party to a Deed of Trust securing certain real property commonly
known as 2018 Valley Rd and located in SAN DIEGO COUNTY;
said Deed of Trust secures a loan in made to Karen S Bitker
and is referenced by Loan Number 0144760162.

A. _____ Servicer does hereby state that Servicer has contacted the Borrower
to (1) assess the borrower's financial situation; (2) explore
options with the Borrower to avoid foreclosure such as repayment
plans, forbearance agreements and/or loan modifications; (3)
inform Borrower of Borrower's right to a subsequent meeting to be
scheduled within 14 days of said contact; and (4) provide Borrower
with a toll-free number to a HUD certified counseling agency.

B. _____ Servicer does herby state that Servicer was unable to make contact
with the Borrower but that the following efforts were made, to
contact Borrower:

_____ Sent a First-Class letter to Borrower's last known mailing
address advising Borrower (a) that Borrower is in default
under the Loan, (b) that Borrower should contact Servicer
regarding alternative options to avoid foreclosure, (c) of
Servicer's toll-free number with access to a live
representative during Servicer's business hours, (d) of a
toll-free number to a HUD certified counseling agency, and
(e) that Borrower's failure to contact Servicer may result
in commencement of a foreclosure action;

_____ Attempted to contact Borrower by telephone at least 3 times
at 3 different hours on 3 different days at the primary
telephone number on file;

_____ Two weeks after number 2 above was completed and no contact
having been made, Servicer sent a letter via Certified Mail
Return Receipt Requested to Borrower's last known mailing
Address advising Borrower (a) that Borrower is in default
under the Loan, (b) that Borrower should contact Servicer
regarding alternative options to avoid foreclosure, (c) of
Servicer's toll-free number with access to a live
representative during Servicer's business hours, (d) of a
toll-free number to a HUD certified counseling agency, and
(e) that Borrower's failure to contact Servicer within 30
days of a receipt of this letter will result in commencement
of a foreclosure action;

_____ Other: Please attach a detailed statement of attempts made to
contact the Borrower(s).



**MORTGAGE**

SunTrust Mortgage, Inc.
Post Office Box 27767
Richmond, VA 23261-7767
Toll Free 1.800.443.1032

3793

Page 2

C. ___ Servicer does hereby state that:

___ Servicer has determined that the Borrower's primary telephone number and secondary telephone number on file, if any, have been disconnected;

___ No efforts were made to contact Borrower in that on Borrower surrendered the property as evidenced by a letter confirming the surrender or by delivering the keys to the property to the Servicer or Servicer's agent;

___ No efforts were made to contact Borrower in that Servicer has evidence in its file and reasonably believes that the Borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to Servicer;

___ No efforts were made to contact Borrower in that Servicer has verified information that on or before the date of this declaration, the Borrower filed for bankruptcy and the proceedings have not been finalized.

This declaration is made for the purpose of inducing _____

_____ to proceed with the filing of a Notice of Default and/or a Notice of Sale under a Deed of Trust in which the undersigned has an interest knowing that the Trustee will rely upon the truth and accuracy of the statements contained herein in commencing and handling such foreclosure action up to and including filing the Notice of Sale on the foreclosure.

I declare under penalty of perjury of the State of California that to the best of my knowledge the foregoing statements are true and correct. WITNESS my signature this _____ day of

_____

By: _____

Its: _____

CL036  JTB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "F"

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

RECORDING REQUESTED BY:

Old Republic Title Company

AND WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **12-3418-11**

# SUBSTITUTION OF TRUSTEE

  **WHEREAS, KAREN S. BITKER, A WIDOW** was the original Trustor, **JACKIE MILLER** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR SUNTRUST MORTGAGE, INC., A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **3/28/2006** and recorded on **4/4/2006** as Instrument No. **2006-0232285** of Official Records of **San Diego** County, California; and

  **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

  **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

  **NOW, THEREFORE,** the undersigned hereby substitutes **THE WOLF FIRM, A LAW CORPORATION, 2955 Main Street, 2nd Floor, Irvine, California 92614** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
Dated: _10/26/12_

        **U.S. Bank National Association as trustee of BAFC 2006-5, by its attorney in fact SunTrust Mortgage, Inc.**

        _Shaundra Hunt_   Officer
        _Shaundra Hunt_

State of Virginia     } SS
City of Richmond     }

On _10/26/12_ before me, _AVA TUCKER_ _____ personally appeared _Shaundra Hunt_ _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Virginia that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Ava Tucker_ _____ (Seal)
    Notary Public



(Notary seal:)
AVA TUCKER
NOTARY PUBLIC
REG # 7509251
MY COMMISSION
EXPIRES
4/30/2015
COMMONWEALTH OF VIRGINIA

# EXHIBIT "A"
## AFFIDAVIT OF MAILING
### FOR SUBSTITUTION OF TRUSTEE BY CODE

TS No.: **12-3418-11**

Trustor: **KAREN S. BITKER, A WIDOW**

**I, Frank Escalera, Foreclosure Team Lead,** declare: That I am an officer, agent or employee of THE WOLF FIRM, A LAW CORPORATION whose business address is:

> 2955 Main Street, 2nd Floor
> Irvine, California 92614

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/4/2013

Frank Escalera, Foreclosure Team Lead

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "G"

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

RECORDING REQUESTED BY
The Wolf Firm

AND WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
Phone: (949) 720-9200
Foreclosure Dept. Fax (949) 608-0130

T.S. No. 12-3418-11

Loan No. 0144760162

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/28/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **KAREN S. BITKER, A WIDOW**
Duly Appointed Trustee: **THE WOLF FIRM, A LAW CORPORATION**
Recorded 4/4/2006 as Instrument No. 2006-0232285 of Official Records in the office of the Recorder of San Diego County, California,
Date of Sale: 4/2/2013 at 10:00 AM
Place of Sale:    At the entrance to the east county regional center by statue, 250 E. Main Street, El Cajon, CA 92020
Amount of unpaid balance and other charges: **$629,570.91, estimated**
Street Address or other common designation of real property:    **2018 VALLEY ROAD**
A.P.N.: **165-074-27**    **OCEANSIDE, CA 92056**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance



company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(714) 573-1965** or visit this Internet Web site **www.priorityposting.com**, using the file number assigned to this case **12-3418-11**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 3/4/2013

**THE WOLF FIRM, A LAW CORPORATION**
**2955 Main Street, 2nd Floor**
**Irvine, California 92614**
**Foreclosure Department (949) 720-9200**
**Sale Information Only: (714) 573-1965 www.priorityposting.com**

Frank Escalera, Team Lead

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "H"

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
50

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

January 31, 2013

Suntrust Mortgage
PO Box 26149- Mail Code RVW 3003
Richmond, VA 23260-6149
Fax (804) 745-8115

The Wolf Firm
2955 Main Street, Second Floor
Irvine, CA 92614
Fax 949.608.-0130

RE:                    Karen S. Bitker
Loan Number:           0144760162

Dear Sir or Madam:

This office has been retained by Karen S. Bitker with regard to real property **2018 Valley Road, Oceanside, CA 92056**, with lender Suntrust Mortgage, and set for auction under The Wolf Firm, TS # 12-3418-11.

Please be advised that the borrower has had a change of circumstance as her income and expenses have changed. Pursuant to the 2013 CA Homeowner's Bill of Rights, a borrower shall be reviewed by the mortgage servicer for a loan modification based on a material change of financial circumstances. **Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement.** Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]

At this time, there is a projected sale date scheduled for March 30, 2013 which is in violation of CA Civil Code §2923.6. The sale date must be cancelled, and the borrower must be evaluated for a loan modification, or other foreclosure alternative, due to the change in her financial circumstances.

Please confirm that her loan modification will be evaluated and that the sale date has been cancelled and advise our office by **Friday, February 1, 2013 before 5:00 p.m.,** or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
**LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION**

Joseph R. Manning, Jr., Esq.

TrueBlock™ Technology Patent Pending
Use Avery® TEMPLATE 5168™

www.avery.com
1-800-GO-AVERY

AVERY® 5168™

TX Result Report

P. 1
01/31/2013 16:32
Serial No.  A4FJ011001658
TC:    80896

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 19496080133 | 01-31 16:31 | 00:00:49 | 001/001 | OK | |

Note    TMR:Timer TX, POL:Polling, ORG:Original Size Setting, FME:Frame Erase TX,
        PGS:Page Separation, PRI:Priority, BND:Binding Original TX, CAL:Manual TX, CAN:ISPC,
        PWR:Forward, PC:PC-FAX, BRD:Broadcast, @BD:Binding Direction, @O:Special Original,
        FCOD:F-Code, RIX:Rmt-TX, RLY:Relay, MBX:Confidential, BUL:Bulletin, SIP:Sip Fax,
        IFAX:IP Address Fax, I-FAX:Internet Fax

Result  OK:Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
        TEL: RX, NG: Other Error, CONT: Continue, NO ANS: No Answer,
        Refuse: Receipt Refused, BUSY: Busy, MEM FULL: Memory Full, LONG: Receiving length Over,
        POW ENG: Receiving page Over, FIL: File Error, DC:Decode Error, MDN:MDN Response Error,
        DMN:DSN Response Error, PRINT:Compulsory Memory Document Print,
        DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.

---

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

January 31, 2013

Suntrust Mortgage
PO Box 26149- Mail Code RVW 3003
Richmond, VA 23260-6149
Fax (804) 745-8115

The Wolf Firm
2955 Main Street, Second Floor
Irvine, CA 92614
Fax 949.608.0133

RE:     Fax Number:                 S. Bitker
        Loan Number:                0162

Dear Sir or Madam:

        This office has been retained by Sharon S. Bitker with regard to the property 2018 Valley Road,
Oceanside, CA 92056, with lender Suntrust Mortgage and servicing agent under The Wolf Firm, TS # 12-
3418-11.

        Please be advised that the borrower's financial circumstance as her income and expenses
have changed. Pursuant to the 2013 CA Homeowner's Bill of Rights, a borrower shall be reviewed by the
mortgage servicer for a loan modification upon a material change of financial circumstances.

        Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency
enforcement. Material violations are also deemed to be a violation of a California charter or lender license
and subject to agency administrative enforcement that could jeopardize continued engagement in
California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]

        At this time, there is a projected sale date scheduled for March 30, 2013 which is in violation of
CA Civil Code §2923.6. The sale date must be cancelled, and the borrower must be evaluated for a loan
modification, or other foreclosure alternative, due to the change in her financial circumstances.

        Please confirm that her loan modification will be evaluated and that the sale date has been
cancelled and advise our office by Friday, February 1, 2013 before 5:00 p.m., or this office will seek
injunctive relief from the Court, under the California Homeowner's Bill of Rights.

        If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

AVERY® 5168™

www.avery.com
1-800-GO-AVERY

TrueBlock™ Brevet de Technologie en attente
Utilisez le gabarit 5168™

TrueBlock™ Technology Patent Pending
Use Avery® TEMPLATE 5168™

www.avery.co
1-800-GO-AVERY

 **AVERY® 5168™**

TX Result Report

P 1
01/31/2013 16:47
Serial No. A4FJ011001658
TC: 80947

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 19496080130 | 01-31 16:46 | 00:00:50 | 001/001 | OK | |

Note    TMR:Timer TX. POL:Polling. ORG:Original Size Setting. FME:Frame Erase TX.
DSP:Page Separator. P&C-FAX: Mixed Original TX. CALL:Manual TX. CON:CON&C.
FWD:Forward. PC:PC-FAX. BND:Double Binding Direction. C6:Special Original.
FCODE:F-code. Mrkine-TX. RLY:Relay. MBX:Confidential. BUL:Bulletin. RIP:RIP Fax.
IPADR:IP Address FAX. I-FAX:Internet Fax

Result    OK: Communication OK. S-OK: Stop Communication. PW-OFF: Power Switch OFF.
TEL: No Answer. DEL:ME:other Error. Cont:Continue. No Ans: No Answer.
Refusal:Receipt Refused. Busy: Busy. M-Full:Memory Full. LOUR:Receiving length Over.
POWR:Receiving page Over. FIL:File Error. DC:Decode Error. MDN:MDN Response Error.
DSN:DSN Response Error. CMRT:Compulsory Memory Document Print.
DEL:Compulsory Memory Document Delete. SEND:Compulsory Memory Document Send.

---

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

January 31, 2013

Suntrust Mortgage
PO Box 26149- Mail Code RVW 3003
Richmond, VA 23260-6149
Fax (804) 745-8115

The Wolf Firm
2955 Main Street, Second Floor
Irvine, CA 92614
Fax 949.608.0150

Dear Sir or Madam:

    This office has been retained by [illegible] Bitker with respect to real property 2018 Valley Road, Oceanside, CA 92056, with lender Suntrust Mortgage and servicer action under The Wolf Firm, TS # 12-3418-11.
    Please be advised that the borrower has a serious circumstance as her income and expenses have changed. Pursuant to the 2013 CA Homeowner's Bill of Rights, a borrower shall be reviewed by the mortgage servicer for a loan modification whenever there is a change of financial circumstances.
    Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement. Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]
    At this time, there is a projected sale date scheduled for March 30, 2013 which is in violation of CA Civil Code §2923.6. The sale date must be cancelled, and the borrower must be evaluated for a loan modification, or other foreclosure alternative, due to the change in her financial circumstances.
    Please confirm that her loan modification will be evaluated and that the sale date has been cancelled and advise our office by Friday, February 1, 2013 before 5:00 p.m., or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

    If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

1-800-GO-AVERY
www.avery.com
TrueBlock™ Brevet de Technologie en attente
Utilisez le gabarit 5168™

TX Result Report

P  1
02/07/2013 14:41
Serial No.  A4FJ011001650
TC:  90124

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 18047458115 | 02-07 14:39 | 00:00:56 | 000/001 | No Ans | |

Note  TM#:Timer TX, POL:Polling, ORG:Original Size Setting, FME:Frame Erase TX,
SEP:Page Separation-IN, MIX:Mixed Original TX, CAL:Manual TX, SSP:Special
EMB:Forward-TX, BND:Double-Sided Binding Direction, SP:Special Original,
CODE:E-Code, RTX:Re-TX, RLY:Relay, CNF:Confidential, BUL:Bulletin, SIP:SIP Fax,
IPADR:IP Address Fax, I-FAX:Internet Fax

Result  OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
TEL: RX from TEL, NG: Other Error, Cont: Continue, No Ans: No Answer,
Refuse: Receipt Refused, Busy: Busy, M-Full:Memory Full, LOVR:Receiving length Over,
POW:Receiving page Over, FIL:FILE Error, DC:Decode Error, MDN:MDN Response Error,
PRI:DSN Response Error, PrtAr:Compulsory Memory Document Print,
DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8808
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

January 31, 2013

Suntrust Mortgage
PO Box 26149- Mail Code RVW 3003
Richmond, VA 23260-6149
Fax (804) 745-8115

The Wolf Firm
2955 Main Street, Second Floor
Irvine, CA 92614
Fax 949.608.0150

Dear Sir or Madam:

This office has been retained by the Bitker with regard to real property 2018 Valley Road, Oceanside, CA 92056, with lender Suntrust Mortgage and set for auction under The Wolf Firm, TS # 12-3418-11.

Please be advised that the borrower's financial assistance as her income and expenses have changed. Pursuant to the 2013 Civil Code §2923.6, due to change of financial circumstances, a borrower shall be reviewed by the mortgage servicer for a loan modification if requested by the borrower.

Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement. Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]

At this time, there is a projected sale date scheduled for March 30, 2013 which is in violation of CA Civil Code §2923.6. The sale date must be cancelled, and the borrower must be evaluated for a loan modification, or other foreclosure alternative, due to the change in her financial circumstances.

Please confirm that her loan modification will be evaluated and that the sale date has been cancelled and advise our office by Friday, February 1, 2013 before 5:00 p.m., or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

# Exhibit "I"

Case No. 13 CV 0656

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
51

**Tina Mehrazar**

| | |
|---|---|
| **From:** | Tina Mehrazar |
| **Sent:** | Wednesday, March 27, 2013 9:19 AM |
| **To:** | 'bryan.leifer@akerman.com'; 'hassan.elrakabawy@wolffirm.com' |
| **Cc:** | Babak Hashemi; Janet Harris; Diana Lopez; Katie Tribbey |
| **Subject:** | Bitker, et al. v. Suntrust, et al.- Notice of Ex Parte |

Dear Counsel,

     As you are aware, this office represents Karen S. Bitker with regard to real property **2018 Valley Road, Oceanside, CA 92056,** with lender SunTrust Mortgage, and set for auction under The Wolf Firm scheduled for April 2, 2013.

     Please be advised that Plaintiffs will move the court *Ex Parte* in Judge Cathy Ann Bencivengo's department of the United States District Court- Southern District of California. Ex Parte applications are submitted on the papers. If the Court finds that a hearing is necessary, counsel will be notified and given a hearing date and time.  At that time this office will move the Court for a temporary restraining order and preliminary injunction to stop any sale, advertising, or foreclosure activity of any kind with respect to the sale or foreclosure of the above-referenced property.

     If you have any questions, please feel free to contact our office at (949)200-8755.



MANNING
L A W   O F F I C E
A PROFESSIONAL CORPORATION
CIVIL TRIALS, FORECLOSURE DEFENSE,
PERSONAL INJURY, DEBT COLLECTION ABUSE,
TAX SETTLEMENT, DISABILITY & BANKRUPTCY COUNSEL.

Tina Mehrazar
**Manning Law, APC**

4667 MacArthur Blvd., Suite 150 | Newport Beach, California 92660
o 949.200.8755 | d  949.200.8756  | f  866.843.8308
tinam@manninglawoffice.com
manninglawoffice.com

The information contained in this electronic transmission is attorney privileged and confidential information intended only for the recipient(s) named above. If you are not the intended recipient dissemination, distribution or copying is strictly prohibited. If you received this communication in error please notify the sender via telephone and delete this transmission. Thank you.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| | | |
|---|---|---|
| Attorney: | Office: 949.200.8755 | 4667 MacArthur Blvd., Suite 150 |
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA 92660 |
| Info@ManningLawOffice.com | | www.ManningLawOffice.com |

March 27, 2013

Bryan M. Leifer, Esq.
Akerman Senterfitt LLP
725 South Figueroa St., 38th Floor
Los Angeles, CA 90017
Fax 213-627-6342
*Attorneys for Defendant Suntrust Mortgage and U.S. Bank National*

Hassan Elrakabawy, Esq.
The Wolf Firm
2955 Main Street, Second Floor
Irvine, CA 92614
Fax 949-608-0129
*Attorneys for Defendant The Wolf Firm*

      **RE:**    *Bitker, et al. v. SunTrust, et al.*
            **NOTICE OF EX PARTE HEARING**

Dear Counsel:

     As you are aware, this office represents Karen S. Bitker with regard to real property **2018 Valley Road, Oceanside, CA 92056,** with lender SunTrust Mortgage, and set for auction under The Wolf Firm scheduled for April 2, 2013.

     Please be advised that Plaintiffs will move the court *Ex Parte* in Judge Cathy Ann Bencivengo's department of the United States District Court- Southern District of California. Ex Parte applications are submitted on the papers. If the Court finds that a hearing is necessary, counsel will be notified and given a hearing date and time.  At that time this office will move the Court for a temporary restraining order and preliminary injunction to stop any sale, advertising, or foreclosure activity of any kind with respect to the sale or foreclosure of the above-referenced property.

     If you have any questions, please feel free to contact our office at (949)200-8755.

               Sincerely yours,
               **LAW OFFICES OF JOSEPH R. MANNING, JR.**
               **A PROFESSIONAL CORPORATION**

               Joseph R. Manning, Jr., Esq.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308

4667 MacArthur Blvd., Ste 150
Newport Beach, CA 92660
www.ManningLawOffice.com

## FASCIMILE TRANSMITTAL SHEET

TO:
Bryan M. Leifer, Esq.
Akerman Senterfitt LLP

FROM:
Manning Law Office

FAX NUMBER:
213-627-6342

FAX NUMBER:
866.843.8308

CASE NAME:
Bitker, et al. v. SunTrust, et al.

DATE:
March 27, 2013

RE:

Notice of Ex Parte

TOTAL NO. OF PAGES, INCLUDING COVER

2

☐ URGENT    ☐ FOR REVIEW    ☒ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE RECIPIENT NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT DISSEMINATION, DISTRIBUTION OR COPYING IS STRICTLY PROHIBITED. IF YOU RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY THE SENDER VIA TELEPHONE. THANK YOU.

TX Result Report

P 1
03/27/2013 09:18
Serial No.   A4FJ011001658
TC:   142377

| Addressee | Start Time | Time | Prints | Result | Note |
|-----------|-----------|------|--------|--------|------|
| 19496080129 | 03-27 09:15 | 00:02:34 | 002/002 | OK | |

Note    TMR:Timer TX, POL:Polling, ORG:Original Size Setting, FME:Frame Erase TX,
DPS:Page Separation, Mx:Mixed Original TX, CALL:Manual TX, CSRC:CSRC,
FWD:Forward, PC:PC-FAX, BND:Double-Sided Binding Direction, SP:Special Original,
FCODE:F-code, RTX:Re-TX, RLY:Relay, MBX:Confidential, BUL:Bulletin, SIP:SIP Fax,
IPADR:IP Address Fax, I-FAX:Internet Fax

Result   OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
TEL: RX from TEL, NG: Other Error, Cont: Continue, No Ans: No Answer,
Refuse: Receipt Refused, Busy: Busy, M-Full:Memory Full, LOVR:Receiving length Over,
POVR:Receiving page Over, FIL:File Error, DC:Decode Error, MDN:MDN Response Error,
DSN:DSN Response Error, PRINT:Compulsory Memory Document Print,
DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL.

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308

4667 MacArthur Blvd., Ste 150
Newport Beach, CA 92660
www.ManningLawOffice.com

## FASCIMILE TRANSMITTAL SHEET

TO:
Hassan Elrakabawy, Esq.
The Wolf Firm

FROM:
Manning Law Office

FAX NUMBER:
949-608-0129

FAX NUMBER:
866.843.8308

CASE NAME:
Bitker, et al. v. SunTrust, et al.

RE:
Notice of Ex Parte



☐ URGENT      ☐ FOR REVIEW      ☐ PLEASE      ☐ PLEASE REPLY      ☐ PLEASE RECYCLE

NOTES/COMMENTS:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE RECIPIENT NAMED ABOVE. IF
YOU ARE NOT THE INTENDED RECIPIENT DISSEMINATION, DISTRIBUTION OR COPYING IS
STRICTLY PROHIBITED. IF YOU RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY
THE SENDER VIA TELEPHONE.  THANK YOU.

TX Result Report

| Addressee | Start Time | Time | Prints | Result | Note |
|-----------|-----------|------|--------|--------|------|
| 12136276342 | 03-27 09:18 | 00:00:32 | 002/002 | OK | |

Note   TMR:Timer TX, POL:Polling, ORG:Original Size Setting, FME:Frame Erase TX,
PGS:Page Separation, MIX:Mixed Original TX, CAL:Manual TX, CSRC:CSRC,
FWD:Forward, PC:PC-FAX, BND:Double-Sided Binding Direction, SP:Special Original,
ECODE:F-code, RTX:Re-TX, RLY:Relay, MBX:Confidential, BUL:Bulletin, SIP:SIP Fax,
IPADR:IP Address Fax, I-FAX:Internet Fax

Result   OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
TEL: RX from TEL, NG: Other Error, Cont: continue, No Ans: No Answer
Refuse: Receipt Refused, Busy: Busy, M-FULL:Memory Full, LOVR:Receiving length Over,
POVR:Receiving page Over, FIL:File Error, DC:Decode Error, MDN:MDN Response Error,
DSN:DSN Response Error, PRINT:Compulsory Memory Document Print,
DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.



# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308

4667 MacArthur Blvd., Ste 150
Newport Beach, CA 92660
www.ManningLawOffice.com

## FASCIMILE TRANSMITTAL SHEET

TO:
Bryan M. Leifer, Esq.
Akerman Senterfitt LLP

FROM:
Manning Law Office

FAX NUMBER:
213-627-6342

FAX NUMBER:
866-843-8308

CASE NAME:
Bitker, et al. v. SunTrust,

RE:
Notice of Ex Parte

INCLUDING COVER

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE RECIPIENT NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT DISSEMINATION, DISTRIBUTION OR COPYING IS STRICTLY PROHIBITED. IF YOU RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY THE SENDER VIA TELEPHONE. THANK YOU.

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On March 27, 2013 I served the true copies of the foregoing document described as **PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND [PROPOSED]ORDER** on the interested parties in this action, addressed as follows:

> **Served Electronically via Court's CM/ECF System:**
> *Attorneys for Defendant*
> AFRCT, LLP.
> Dean Reeves
> 199 South Los Robles Ave., Ste 600
> Pasadena, CA 91101
>
> BARRETT DAFFIN FRAPPIKER TRDER & WEISS, LLP
> Masumi Jagdish Patel
> 20955 Pathfinder Rd., Suite 300
> Diamond Bar, CA 91765

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this affidavit was executed on March 27, 2013.

Tina Mehrazar

Case No. 13 CV 0656

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**