Joseph R. Manning, Jr. (SBN: 223381)
Babak Hashemi (SBN: 263494)
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, California 92660
Tel: 949.200.8755; Fax: 866.843.8308
ecf@manninglawoffic.com

Attorneys for Plaintiffs KAREN S. BITKER and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUST DATED AUGUST 9, 1995

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN S. BITKER, an individual, and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUSTED DATED AUGUST 9, 1995,<br><br>Plaintiffs,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC., a business entity form unknown, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF BAFC 2006-5, a business entity form unknown, THE WOLF FIRM, a business entity form unknown, and DOES 1-100, inclusive,<br><br>Defendants. | CASE No: 3:13-cv-00656-CAB-WMC<br><br>[Assigned to the Hon. Cathy Ann Bencivengo]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [F.R.C.P. 12(B)(6)]**<br><br>Date:     September 20, 2013<br>Time:    2:30 p.m.<br>Ctrm.:    4C |

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiffs, KAREN S. BITKER and KAREN S. BITKER, SUCCESSOR TRUSTEE OF THE M.K. BITKER LIVING TRUST DATED AUGUST 9, 1995 hereby oppose Defendants SUNTRUST MORTGAGE, INC. ("Suntrust"), U.S.

Case No. 13 CV 00656
1
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BANK N.A., AS TRUSTEE OF BAFC 2006-5 and THE WOLF FIRM's (collectively "Defendants") Motion to Dismiss Plaintiffs' Complaint for failure to state a claim.

## I. INTRODUCTION

Defendants' Motion attempts to wipe out all of Plaintiffs' allegations with the claim that Plaintiffs' complaint fails because the relevant allegations cannot be applied retroactively; however, Plaintiffs sustained injuries in 2013 as a result of Defendants' wrongful conduct which also occurred after and has continued since January 1, 2013.

Plaintiffs filed a complaint against Defendants for violations of California Civil Codes §§2923.6, 2924, Violations of California Business & Professions Code §17200, and a demand for Accounting. As a threshold matter, Plaintiffs have suffered injury in fact in 2013 as a direct result of Defendants' violations of California Civil Code §§ 2923.6 and 2924. Furthermore, Ms. Bitker has standing to bring this suit because she is a "borrower" under the deed of trust secured by the Subject Property. Pursuant to *Civil Code* §2920.5, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through his or her mortgage servicer". (*Civil Code* §2920.5 (c)).

Additionally, Defendants' violations of §2923.6 and wrongful foreclosure of the property commonly known as 2018 Valley Road, Oceanside, CA 92056 (the "Subject Property") occurred in 2013; therefore, Defendant's claims of retroactivity are irrelevant.

## II. FACTUAL BACKGROUND

On or about April 2, 2013, Defendants conducted a non-judicial foreclosure sale of the Property in violation of Civ. Code §2923.55, 2923.6 (c) (This conduct is

Case No. 13 CV 00656

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

also known as "Dual Tracking"). This case was filed following the initiation of a wrongful foreclosure action on the Subject Property which was halted pursuant to this court's order. As of January 31, 2013, Defendants have been on actual notice of Plaintiffs' documented material change in financial circumstances. This notice of Plaintiffs' material change in financial circumstances was submitted in accordance with CA Civ. Code §2923.6(g). Plaintiffs have continued to document this material change by submitting a complete financial packet in accordance with §2923.6 (c) to Defendants' counsel.

Plaintiffs performed dutifully under the Loan, as required, until 2011 when, due to the downturn in the economy, Plaintiffs suffered a temporary financial setback. Thereafter, she made some of the monthly mortgage payments under the terms of the Loan but was unable to make all the required payments.

On or around September 2011, Plaintiff contacted Defendant, Suntrust, the apparent mortgage servicer of her loan, to inquire about a loan modification option. At this point, Plaintiffs' credit score was very high and was current on the mortgage payments. Karen Bitker was advised that she must become delinquent in her mortgage obligation in order to qualify for the appropriate loan modification programs available to her. From September 29, 2011 until the date of this pleading, Defendant Suntrust has failed to provide Plaintiffs the promised HAMP loan modification. As alleged in Plaintiffs' complaint, Defendant strung along Plaintiff Bitker for almost two years, during which time the arrearages on Plaintiffs' balance have grown exponentially.

///

Case No. 13 CV 00656

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## II. ARGUMENT

### A. <u>DEFENDANTS' CLAIMS FOR DISMISSAL ARE WITHOUT MERIT</u>

The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court noted that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which they base their claim. To the contrary, all the Rules require is 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests."

In ruling on a motion to dismiss, the Court must accept all material allegations of fact alleged in the complaint as true and resolve all doubts in favor of Plaintiff. (*Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998)). The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] Moreover, the Rules require a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Motions to dismiss are disfavored, as there exists "'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson.* In considering a motion to dismiss, a district court must take as true all well-pleaded allegations of material fact and must construe them in the light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). A

court also must take into account all inferences supporting the complaint that a trier of fact reasonably could draw from the evidence. See *Id*.

Even applying the standard set by the case of *Bell Atlantic Corporatin v. Twombly* 550 U.S. 544 (2007) which requires that complaint should have enough factual matter, not just labels, conclusions, and formulaic recitation of the elements of cause of action, the instant case has still sufficient and enough facts to state a claim of relief that is tenable on its face.

With regards to foreclosure-related case, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims." *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011). "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id.* at 791 Quoting *In re Gilead Sciences Sec. Litig.,*536 F.3d 1049, 1057 (9th Cir. 2008).

Here, Plaintiffs have stated and identified in the Complaint the Defendants and enumerated the different causes of action against them with sufficient factual support. A complaint may not be dismissed if there is any set of facts set forth in the complaint which will support a cause of action. When a Court rules on motion to dismiss, it must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the Plaintiffs. In fact, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." [*Bernheim v. Litt,* 79 F.3d 318(1996)].

### B. Tender is Not a Requirement in this Action

Defendants contend that Plaintiffs' claims are defective because they failed to allege that a valid and viable tender of payment of the indebtedness. (See *Karlsen v.*

**Case No. 13 CV 00656**

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 ["valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"].)  However, Plaintiffs are not required to allege a tendered payment of the loan balance because (1) there are many exceptions to the tender rule, (2) defendants have offered no authority for the proposition that the absence of a tender bars a claim for damages See generally, Annotation, *Recognition of Action for Damages for Wrongful Foreclosure—Types of Action* (2013) 82 A.L.R.6th 43 (claims that a foreclosure is "wrongful" can be tort-based, statute-based, and contract-based) and (3) the tender rule is a principle of equity and its application should not be decided against him at the pleading stage.

Furthermore, tender is not required where the foreclosure sale is void, rather than voidable, such as when a plaintiff proves that the entity lacked the authority to foreclose on the property. (*Lester v. J.P. Morgan Chase Bank, supra,* ___ F.Supp.2d ___, [2013 WL 633333, p. *8]; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, § 10:212, p. 686.)  Here, Plaintiffs have alleged that Defendant, U.S. Bank N.A. as trustee of the BAFC 2006-5 trust is not the beneficiary of the Deed of Trust because the Corporate Assignment of Deed of Trust (Def. RJN, Exhibit "3") purportedly assigning the beneficial interest in Plaintiffs' 2006 Deed of Trust to the BAFC-5 2006 Trust was ineffective.  This trust, by its own rules and regulations, *closed on September 1, 2006*. The failure to transfer the Deed of Trust timely (prior to the closing of the BAFC 2006 Trust *in 2006*) results in the Note and Mortgage not being part of the Trust *res*, and as a result, collection efforts by Suntrust and/or BAFC-5 2006 are improper.

### C.     <u>Plaintiffs Have Alleged Sufficient Facts for a §2923.6 Claim</u>

Defendants' violation under this code section is twofold. First, Defendants continued their foreclosure activity after being notified of Plaintiffs' material change in financial circumstances, therefore, engaging in dual tracking; and second, Defendant's failed to make a determination as to whether Plaintiffs qualify for a foreclosure alternative after acceptance of Plaintiffs' first lien loan modification application which was deemed completed in January 2013.

There is no dispute that Ms. Bitker has experienced a material change in her financial circumstances. Now, pursuant to the Homeowner's Bill of Rights, specifically *Civil Code* §2923.6, Suntrust is compelled to review her modification application and cease to continue all foreclosure activity. As stated, Plaintiffs first communicated this change in financial circumstances to Defendants on January 31, 2013. Following this notice, Plaintiffs submitted a complete loan modification application to Defendants. Plaintiffs concede that the application was not complete until after January 31, 2013, when she had finally submitted all the requested financial documents in support for her application. Consequently, the application was complete after January 1, 2013 and Civ. Code §§ 2923.6 (c), (g) and (h) are applicable.

Suntrust must now review Plaintiffs for a foreclosure alternative and may not continue foreclosure activity on the Subject Property until they have exhausted an appeal of their written denial, as set forth in *Civil Code* §2923.6(c). Suntrust has been in possession of Ms. Bitker's complete loan modification application and documents supporting her material change in finances since September 2011 and has failed to offer Plaintiffs a foreclosure alternative.

The intent of the California legislators in enacting *Civil Code* §2923.6 was to address the consequences of the subprime mortgage crisis leading to declining real

Case No. 13 CV 00656

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

property values and historic levels of foreclosure. As a result of the above-described violations, the foreclosure sale of Plaintiffs' property must be postponed, until Defendant has complied with *Civil Code* §2923.6 <u>which does not require an offer of tender.</u>

As set forth in Plaintiffs' complaint, her financial circumstances have materially changed for the better. Plaintiffs' financial packet, substantiating the change in income was completed shortly after January 31, 2013. Accordingly, pursuant to Civil Code §2923.6, Defendant is obligated to actually evaluate Plaintiffs for any and all foreclosure prevention alternatives, including a loan modification, based on this material change in their financial circumstances.

The foreclosure activity alleged in the complaint is also a violation of California *Business and Professions Code* §17200 as "unlawful" and "unfair" business practices. Pursuant to the provisions of *Civil Code* §2924g(c)(1)(A), a foreclosure sale may properly be postponed by order of a Court of competent jurisdiction such as this Federal District Court.

**D.     Plaintiffs Have Sufficiently Stated Facts for a Violation Of California Business and Professions Code section 17200.**

Plaintiffs have pleaded specific facts in support of this cause of action and clearly suffered injury in fact, including loss of equity in the home (by growth in amounts of delinquent interest, declining property value and inflated fees), costs and expenses related to protecting themselves, fees and costs, including, without limitation, attorneys' fees and costs and higher cost of obtaining credit due to the deterioration of their credit scores.

Plaintiffs' UCL claim is premised on "fraudulent" fees and charges assessed onto the loan balance as well as recording a lame assignment of the Deed of Trust to the BAFC 2006-5 trust, which could not accept such an assignment at the time of the

execution of the document. Defendants also engaged in "unfair" business practices because of "Dual Tracking" on Plaintiffs' loan modification process and "unlawful" business practices due to the violations of Civil Code §§ 2924 and 2923.6.

The term "fraudulent" as used in section 17200 does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived. *Puentes v. Wells Fargo Home Mortg.,Inc,* (2008) Cal.App.4th 638 (Quotations omitted). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" *Puentes,* Supra at 645. Here, Defendants' conduct not only deceives the general public but targets a vulnerable group of consumers who are at risk of losing their home.

*Cal. Bus. & Prof. Code* §17200 proscribes "any unlawful, unfair or fraudulent business act of practice[.]" Any such act serves the basis for a claim of unfair competition. *Cal-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, (1999) 20 Cal.4th 163, 180; *In re Pomona Valley Med. Group*, (9th Cir. 2007) 476 F.3d 665, 674. Plaintiffs' UCL cause of action is premised on unfair and unlawful business practices. Virtually any law or regulation- federal or state, statutory or common law- can serve as predicate for a section 17200 violation. The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made. *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832,838-39. Defendants failure to comply with §§2923.55 and 2923.6 is unlawful.

Virtually any law or regulation – federal or state, statutory or common law – can serve as a predicate for a section 17200 violations. Business & Professions Code §17200 does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

Case No. 13 CV 00656

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

advertising. Cal. Bus. & Prof. Code *§17200*. Because section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa." *Puentes v. Wells Fargo Home Mortg., Inc.,* (2008) 160 Cal. App. 4th 638, 643-644. Plaintiff has standing to assert this claim. *Saunders v. Superior Court* (1994) 27 Cal. $4^{tt}$, 832.

Thus, if a business practice violates any law it also violates section 17200 and may be redressed under that section. *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 319. Furthermore, the California Supreme Court has stated that section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. *Farmers Insurance Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383. Under Business and Professions Code section 17200, any unlawful business act constitutes unfair competition, and a private cause of action can be based on the unlawful act even if the predicate law does not provide for a private cause of action. *Washington Mutual Bank v. Superior Court* (1999) 75 Cal. App. 4th 773.

A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Podolsky v. First Healthcare Corp.,* (1996) 50 Cal. App. 4th 632, 647. Defendant accepted Plaintiffs' modification applications, however, due to its own ineffective administration and/or intentional misconduct, these applications were never adequately considered.

1. <u>Standing</u>

Standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing under the UCL, a plaintiff must sufficiently

allege that (1) she has lost "money or property" sufficient to constitute an "injury in fact" under Article III of the Constitution, and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Birdsong v. Apple, Inc.*, 590 F.3d 959-60 (9th Cir. 2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-56 (2008). Defendants have continued to cause Ms. Bitker apprehension of losing her home through the threat of foreclosure. "The imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm." *Nichols v. Deutsche Bank Nat. Trust Co.*, 2007 WL 4181111, at *3 (S.D. Cal. Nov. 21, 2007) "Losing one's home through foreclosure is an irreparable injury" *See, e.g., Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1 (S.D. Cal. June 15, 2007). Furthermore, the Court in *Nichols v. Deutsche Bank Nat. Trust Co.* 2007 WL 4181111, at *3, held that **"the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."** Similarly, in *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1, the Court found that **"losing one's home through foreclosure is an irreparable injury."**

Suntrust fails to recognize the high calling of efficiently and effectively handling the borrowers' files while knowing that this is someone's family home and sanctuary. Moreover, Plaintiffs have in fact and continue to suffer injury in fact through loss of money and property as a result of Defendants' violations, including but not limited to legal fees, loss of property, and higher cost of credit due to the deterioration of credit scores.

Here, Defendants acted "fraudulently", "unfairly" and "unlawfully" because they did not halt foreclosure activity after Plaintiffs submitted a complete first lien loan modification application evidencing a material change in financial circumstances.

### E.  Defendants' Failure to Respond to Plaintiff's Qualified Written Request

Defendants have not responded to Plaintiffs' Qualified Written Request ("QWR") therefore they are estopped from claiming any defenses.  Defendants' admit that they received the QWR and did not respond to it.

As initially enacted in 1974, the Real Estate Settlement Procedures Act (RESPA) did not have a great impact upon servicers. However, that began to change in 1990 with the Cranston-Gonzalez National Affordable Housing Act of 1990 Amendments to RESPA. This act imposed three general requirements on mortgage servicers: (1) notifying the borrower of servicing transfers; (2) responding to written inquiries from the borrower; and (3) making escrow payments when due. The notification to borrowers is a fairly straightforward procedure, with the language required for the noticing of servicing transfer provided by the regulation. Similarly, the requirement of the servicer to make prompt escrow payments is straightforward.

Section 3500.21(e) of Regulation X defines a "qualified written request" as follows:

> A qualified written request means a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables a servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower.

This section also includes steps that must be taken by servicers in response to qualified written requests (QWR), which will be discussed in more detail below. A "servicer" is defined as "the person responsible for the servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."

The primary indicators of a qualified written request are that the borrower clearly identifies himself/herself, gives an account number or other number that could be used to identify the account in question, and sufficiently states the reasons for the borrower's belief that the account is in error.

A written correspondence from a debtor must also seek information relating to the "servicing" of the loan to be considered a QWR. Servicing is defined in RESPA as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10, 12 U.S.C. §2609, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."

When a servicer receives a letter from a debtor, the letter must meet the above criteria to be considered a QWR and thus be subject to RESPA. The letter must identify the name of the borrower, include an account number or some other reasonable means of identifying the account, and include the debtor's reasons why the account is incorrect. The statute and regulations also require that the debtor's inquiry be related to servicing the loan — basically ensuring that the payments are made properly.

<u>When a servicer receives a QWR from a debtor, it must take appropriate action</u>. First, the servicer must acknowledge in writing receipt of the QWR within 20 days of receiving the letter. Then, within 60 days of receiving the letter, the servicer must do one of three things:

> (1) Correct the borrower's account and inform the borrower of these corrections in writing, which written notification must include the name and telephone number of a representative of the servicer who can provide assistance to the borrower
> (2) Investigate and provide the borrower with a written explanation that includes the reasons the servicer believes the account is correct

and the name and telephone number of an employee, office or department of the servicer that can provide assistance to the borrower, or

(3) Investigate and provide the information requested by the borrower or a written explanation to the borrower of the reasons the servicer cannot obtain the information the borrower is requesting if that information cannot be obtained, and the name and telephone number of an employee, office or department of the servicer that can provide assistance to the borrower.

Defendants failed to send the requested documents; therefore, they violated the requirements under RESPA.

### 1. RESPA

"RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan." *Morris v. Bank of America*, No. C 09-02849, 2011 WL 250325, at *4 (N.D. Cal. Jan. 26, 2011) (citing 12 U.S.C. § 2605(b)). Under RESPA, a Qualified Written Response ("QWR") is "written request from the Borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2603(i)(3). Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). It must also include the name and account of the borrower. *Id.*

Plaintiffs' QWR goes on to put Defendants on notice of potential abuses of their or previous servicing companies that could have deceptively, wrongfully, unlawfully, and/or illegally: Increased the amounts of monthly payments; Increased the principal balance Plaintiffs owe; Increased the escrow payments; Increased the amounts applied and attributed toward interest on this account; Decreased the proper amounts applied and attributed toward the principal on this account; and/or Assessed, charged and/or collected fees, expenses and miscellaneous charges Plaintiffs are not legally obligated to pay under this mortgage, note and/or deed of trust. (*Id.*) Based on the substance of letter, the Court cannot find as a matter of law that the letter is not a QWR nor that Defendants are excused from failing to respond to the request.

Here, Plaintiffs also allege "actual pecuniary damages" that include costs related to damage to their credit. That is a sufficient allegation of actual damages. *See Wise v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2012 WL 105887, at *6 (C.D. Cal. 2012).

### F. **Plaintiffs' are Entitled to an Accounting**

Plaintiffs' demand for accounting is an appropriate relief and is encompassed with the other substantive claims. Here accounting is tethered to relevant actionable claims. *See Duggall v. G.E. Capital Comm. Servs.,Inc.,* 81 Cal. App. 4th 81, 95 (2000).

Suntrust has held itself out to be Plaintiffs' creditor and mortgage servicer. As a result of this purported relationship with Plaintiffs, Defendant has a fiduciary duty to Plaintiffs to properly account for payments made by Plaintiffs. *See* Witkin, California Procedure 5th ed. (2008) Pleadings, Section 820. "A fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an

accounting." *Teselle v. McLoughlin* (2009) 173 Cal. App. 4th 156, 179.  The elements for a claim for accounting are fiduciary relationship or other circumstances appropriate to the remedy, and a balance due from to the defendant to the plaintiff that can only be ascertained by an accounting. *Id*. Witkin.

Plaintiffs alleged, as a result of the conduct, that Plaintiffs paid Suntrust monthly mortgage payments.  However, for the reasons stated in the complaint, none or some of this money was actually owed to Suntrust.  For that reason, these monies are due to be either credited back to Plaintiffs in full or credited to the rightful owner of Plaintiffs' Note and Mortgage.

The amount of the money due from Defendant to Plaintiffs is unknown and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Defendant has failed to sufficiently establish that plaintiffs lack standing to sue and/or are required to tender.  In addition, defendants have failed to establish that plaintiffs' allegation that defendants failed to properly credit payments made, incorrectly calculated interest on accounts, and failed to accurately debit fees is insufficient to establish negligence or accounting cause of action.

The accounting demand incorporates facts alleged in the preceding paragraphs of the Complaint.  In the preceding paragraphs of the Complaint, plaintiffs allege that defendants improperly calculated interest owed on the account and that plaintiff have paid for the same.  Defendants have failed to cite any legal authority showing that they do not owe a duty to account for the interest payments made on the loan.

Here, by this cause of action, Plaintiffs allege the claimed amount due in the Notice of Default is not correct and that such amount includes improper excess charges and fees imposed by Defendants; which these fees are not allowed by law.  Without an accounting by Defendants, the actual amount of arrearages will remain

Case No. 13 CV 00656

16

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

unknown to Plaintiffs, and accounting is necessary.

## III.  CONCLUSION

Plaintiffs respectfully requests that the Court deny Defendants' Motion to Dismiss because Defendants persistently violated §§ 2923.55 AND 2923.6 from January 1, 2013 to date.  Further, not only did Wells Fargo owed Plaintiffs a general duty of care, but it breached that duty by accepting Plaintiffs' complete loan modification application and failed to make a determination of Plaintiff's eligibility. Plaintiff further submits that Wells Fargo's malfeasance arises to a *Negligence per se* claim   To the extent that the Court is inclined to grant this motion, Plaintiffs respectfully requests that the Court grant Plaintiffs leave to amend the Complaint to cure any deficiencies and add additional factual basis in support of their claims.

Respectfully Submitted.

DATED: August 29, 2013             **Law Offices of Joseph R. Manning, Jr.**

By:___/S/_Joseph R. Manning__
    JOSEPH R. MANNING JR.
    Attorneys for Plaintiffs

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On August 30, 2013 I served the true copies of the foregoing document described as **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the interested parties in this action, addressed as follows:

**Served Electronically via Court's CM/ECF System:**

*Attorneys for Defendant*
**SUNTRUST MORTGAGE, INC.**
**U.S. BANK, N.A. AS TRUSTEE OF BAFC 2006-5**
**THE WOLF FIRM**
AKERMAN SENTERFITT, LLP
BRYAN M. LEIFER
725 SOUTH FIGUEROA ST. 38TH FLOOR
LOS ANGELES, CA 90017

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this affidavit was executed on August 30, 2013.

_____
Tina Mehrazar

Case No. 13 CV 00656