1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN S. BITKER, an individual, KAREN S. BITKER, Successor Trustee of the M.K. Bitker Living Trust Dated August 9, 1995,<br><br>                                   Plaintiffs,<br><br>        vs.<br><br>SUNTRUST MORTGAGE, INC., U.S. BANK NATIONAL ASSOCIATION, as Trustee of BAFC 2006-5, THE WOLF FIRM, DOES 1 THROUGH 100, inclusive,<br><br>                                   Defendants. | CASE NO. 13-cv-656-CAB (WMc)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>[Doc. No. 5.] |

This matter comes before the court on defendants' motion to dismiss. [Doc. No. 5.] Plaintiffs responded, defendants replied, and the court held a hearing on September 20, 2013.   For the reasons set forth below, defendants' motion is **GRANTED**. Plaintiffs' claims are dismissed without prejudice and with leave to amend.

## STATEMENT OF THE CASE

On March 4, 2013, the complaint in this action was filed in San Diego County Superior Court by plaintiffs Karen S. Bitker ("Ms. Bitker") and Karen S. Bitker as Successor Trustee of the M.K. Bitker Living Trust ("Karen S. Bitker as Successor Trustee").  [Doc. No. 1-2 at 10.]  Plaintiffs assert seven causes of action arising out of the attempted nonjudicial foreclosure of Ms. Bitker's residence.   Defendants are

Suntrust Mortgage, Inc. ("Suntrust"), U.S. Bank National Association, as Trustee of BAFC 2006-5 ("U.S. Bank"), The Wolf Firm, and DOES 1-100. The record does not evidence that plaintiffs served The Wolf Firm. On March 20, 2013, defendants removed the action to this court on the basis of federal question jurisdiction. [Doc. No. 1.]

On March 27, 2013, plaintiffs filed an *ex parte* application for a temporary restraining order, seeking postponement or cancellation of the nonjudicial foreclosure sale of the subject property. [Doc. No. 4.] That same day, defendants Suntrust and U.S. Bank filed the instant motion to dismiss. [Doc. No. 5.] Then, on March 29, 2013, the court granted plaintiffs' application for a TRO. [Doc. No. 10.] The court ordered defendants to refrain from taking any further action to foreclose on the subject property and scheduled a hearing as to whether a preliminary injunction should issue. [*Id.* at 4.] Since entry of the TRO, the court has thrice continued the preliminary injunction and motion to dismiss hearing, after receiving joint motions from the parties informing of settlement discussions. But it now appears that those discussions have stalled.

## STATEMENT OF FACTS

Plaintiffs' factual allegations, accepted as true, are as follows. In 2006, plaintiff Ms. Bitker entered into a written loan agreement with defendant Suntrust for the sum of $626,250.00, secured by a Deed of Trust against her residence, 2018 Valley Road, Oceanside, CA 92056. [Doc. No. 1-2 ¶ 69.] The Deed of Trust, recorded April 4, 2006, identifies Ms. Bitker as borrower, defendant Suntrust as lender, non-party Jackie Miller as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, acting solely as a nominee for the lender. [Doc. No. 1-2 at 119.]

In 2011, Ms. Bitker suffered a significant financial setback. [*Id.* ¶ 47.] In September 2011, she contacted Suntrust to inquire about a loan modification option. [*Id.* ¶ 48.] On October 26, 2011, Suntrust denied Ms. Bitker's application for a loan modification, stating that she had not submitted all requested documents. [*Id.* ¶ 53.] In December 2011, Ms. Bitker exhausted her funds and was unable thereafter to make

1    any mortgage payments.  [*Id.* ¶ 54.]

2          Ms. Bitker continued attempting to contact Suntrust and submitting documents

3    in an effort to obtain a loan modification.  [*Id.* ¶ 55.]  But Ms. Bitker received a second

4    denial letter in February 2012, again stating that she had failed to provide necessary

5    documents.  [*Id.* ¶ 57.]  Thereafter, Ms. Bitker continued to supply documents which

6    she had previously submitted, but on June 14, 2012, she received communication from

7    Suntrust that she was being denied a modification because "the investor does not

8    participate in HAMP."[1] [*Id.* ¶ 61.]

9          Ms. Bitker again sought to apply for modification in October 2012 and December

10   2012, but she had not obtained a modification as of the filing of her complaint. [*Id.* ¶¶

11   65, 66.]

12          On October 18, 2012, MERS recorded a Corporate Assignment of Deed of Trust,

13   which stated that MERS, as nominee for Suntrust, "hereby grants, assigns and transfers

14   to U.S. Bank National Association as Trustee of BAFC 2006-5 ... all beneficial interest

15   under that certain Deed of Trust dated 3/28/2006...." [Doc. No. 1-2  at 138.]

16          On November 30, 2012, defendant The Wolf Firm recorded the Notice of

17   Default. [Doc. No. 1-2 at 141.] The Notice provided in relevant part:

18
19          NOTICE IS HEREBY GIVEN THAT: THE WOLF FIRM, A LAW
            CORPORATION is the duly appoint Trustee, Substituted Trustee, or
20          acting as agent for the beneficiary under a Deed of Trust dated 3/28/2006,
            executed by KAREN S. BITKER, A WIDOW, as Trustor(s), to secure
21          certain  obligations  in  favor  of  MORTGAGE  ELECTRONIC
            REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR
22          SUNTRUST MORTGAGE, INC., A CORPORATION, as beneficiary,
            recorded 4/4/2006 ....

23   [*Id.* at 142.]

24          On January 31, 2013, Ms. Bitker notified defendants in writing that she had a

25   material change in her financial circumstances.  [*Id.* ¶ 74.]

26   _____

27        [1]  "The Home Affordable Mortgage Program ('HAMP'), 12 U.S.C. § 5219a, is a federal
     program whereby the United States government privately contracts with banks to provide incentives
28   to enter into residential mortgage modifications." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 665
     (9th Cir. 2012).

13cv656

**DISCUSSION**

As an initial matter, plaintiff "Karen S. Bitker, Successor Trustee of the M.K. Bitker Living Trust Dated August 9, 1995," lacks standing to assert any of the causes of action in this complaint, because Karen S. Bitker as Successor Trustee was not a party to the subject loan agreement or to the Deed of Trust that secured the loan. Thus, the court dismisses all claims to the extent they are asserted by Karen S. Bitker as Successor Trustee. For reasons set forth more particularly below, the claims of Ms. Bitker, proceeding individually, are also dismissed.

1.      Cal. Civ. Code § 2923.6

Plaintiff Ms. Bitker's first cause of action is for violation of Cal. Civ. Code § 2923.6, effective January 1, 2013, which provides in relevant part:

> (c)     If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
> 
> (1)     The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
> 
> (2)     The borrower does not accept an offered first lien loan modification within 14 days of the offer.
> 
> (3)     The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code § 2923.6(c). An application is "deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." *Id.* § 2923.6(h).

Here, Ms. Bitker asserts that she submitted a complete loan modification application to Suntrust on or after January 31, 2013, the date she faxed Suntrust and The Wolf Firm correspondence that stated:"Please be advised that the borrower has had a change of circumstance as her income and expenses have changed." [Doc. No. 1-2 ¶

91.] [Doc. No. 1-2 at 147.] Indeed, Ms. Bitker, in her opposition to defendants' motion to dismiss, "concede[s] that [the loan modification application] was not complete until after January 31, 2013, when [Ms. Bitker] had finally submitted all the requested financial documents in support for her application." [Doc. No. 20 at 7.]

Accepting Ms. Bitker's factual allegations as true, once defendant Suntrust received her complete application on about January 31, 2013, Suntrust could not thereafter record a notice of default or notice of sale, or conduct a trustee's sale, until (1) Suntrust made a written determination that Ms. Bitker was ineligible for a first lien loan modification, and any appeal period had expired; (2) Ms. Bitker rejected an offered first lien loan modification within 14 days of the offer; or (3) Ms. Bitker accepted a modification but then defaulted or otherwise breached her obligations under the modification. Cal. Civ. Code § 2923.6(c). Here, Ms. Bitker fails to allege that, after Suntrust received her completed application on January 31, 2013, Suntrust recorded a notice of default or notice of sale, or conducted a trustee's sale. Accordingly, the court **DISMISSES** Ms. Bitker's claim for violation of § 2923.6, without prejudice and with leave to amend.

2. Cal Civ. Code § 2924

Ms. Bitker's second cause of action is for violation of Cal. Civ. Code § 2924. Ms. Bitker asserts that The Wolf Firm, the entity that recorded the Notice of Default, did not have authority to do so. The operative statute when The Wolf Firm recorded the Notice of Default stated that the Notice could be filed by "[t]he trustee, mortgagee, or beneficiary, *or any of their authorized agents*." Cal. Civ. Code § 2924(a)(1) (eff. Jan. 1, 2011 to Dec. 31, 2012).

Here, the Notice of Default states that The Wolf Firm is "the duly appointed Trustee, Substituted Trustee, *or acting as agent for the beneficiary* under" the Deed of Trust. [Doc. No. 1-2 at 142.] Because Ms. Bitker fails to set forth specific factual allegations to support that The Wolf Firm was *not* acting as the agent for the beneficiary when it recorded the Notice of Default, the claim for violation of § 2924 fails. *See, e.g.,*

*Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515-16, 156 Cal. Rptr. 3d 912, 928 (2013).   Accordingly, Ms. Bitker's claim for violation of § 2924 is **DISMISSED** without prejudice and with leave to amend.

3.      Breach of Contract

Ms. Bitker's third cause of action is for breach of contract.  She asserts that defendants breached their obligations under the Deed of Trust, namely: "Defendant failed to timely send Plaintiff a Notice of Intent to Accelerate as required by Non-Uniform Covenant Paragraph 22 of the Deed of Trust." [Doc. No. 1-2 ¶ 121.]  But Ms. Bitker fails to allege that, as a result of defendants' breach, she suffered any damages, a necessary element for a breach of contract claim.  *See*, *e.g.*, *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.") This claim is therefore **DISMISSED** without prejudice and with leave to amend.

4.      Real Estate Settlement Procedure Act

Ms. Bitker's fourth cause of action is for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, which "provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers."  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012).

Under RESPA, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).  In addition, within 30 days of receiving the qualified written request, the servicer must "make appropriate corrections in the account of the borrower" or, after conducting an investigation, provide the borrower with a

1  written explanation or clarification. *Id.* § 2605(e)(2). A qualified written request is:

2      ...written correspondence, other than notice on a payment coupon or other
       payment medium supplied by the servicer, that--
3
4          (i)    includes, or otherwise enables the servicer to identify, the
           name and account of the borrower; and
5
           (ii)   includes a statement of the reasons for the belief of the
6      borrower, to the extent applicable, that the account is in error or provides
       sufficient detail to the servicer regarding other information sought by the
7      borrower.

8  12 U.S.C. § 2605(e)(1)(B).

9      Defendants argue that Ms. Bitker fails to allege that she sent a qualified written

10 request. Ms. Bitker alleges that "[o]n or about July 2012, Plaintiff sent a Qualified

11 Written Request ('QWR') to Defendant Suntrust." [Doc. No. 1-2 ¶ 110.]

12
       The QWR contained information to enable Suntrust to identify Plaintiff's
13     Loan including borrower's name, loan number, and property address.
       Also, the QWR contained requests for information of the loan, specifically
14     the identity and contact information of the creditor/owner of Plaintiff's
       Note, a document including the 'wet' signatures on the relevant
15     Promissory Note, a complete loan history, accumulated late fees and
       charges, and requested information to verify the validity of the purported
16     debt owe.

17 [*Id.* ¶ 111.] This allegation satisfies the first requirement of a QWR, namely that the

18 QWR include or otherwise enable the servicer to identify the name and account of the

19 borrower. 12 U.S.C. § 2605(e)(1)(B)(i). And because Ms. Bitker alleges that she

20 requested information as to "accumulated late fees and charges," thus identifying

21 "information sought by the borrower," *id.* § 2605(e)(1)(B)(ii), the court finds that Ms.

22 Bitker has sufficiently alleged mailing of a QWR.

23     Nonetheless, Ms. Bitker's RESPA claim fails because she does not plead factual

24 allegations to support that she suffered pecuniary damages as a result of the asserted

25 RESPA violation. *See Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089,

26 1097 (N.D. Cal. 2009). The requirement that plaintiffs plead pecuniary damages

27 resulting from the RESPA violation "has the effect of limiting the cause of action to

28 circumstances in which plaintiffs can show that a failure of notice has caused them

1   actual harm." *Id.*  Here, Ms. Bitker does not plausibly allege that defendants' failure

2   to provide the requested information as to accumulated late fees caused her any

3   pecuniary harm.  Accordingly, Ms. Bitker's RESPA claim is **DISMISSED** without

4   prejudice and with leave to amend.

5   5.      Rosenthal Fair Debt Collection Practices Act

6          Ms. Bitker's fifth cause of action is for violation of California's Rosenthal Fair

7   Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq*.  Ms.

8   Bitker does not indicate which provision of the Rosenthal Act defendants violated.  Nor

9   do her factual allegations make clear which provision was violated.  Further, courts in

10  the Ninth Circuit have held that "[f]oreclosure does not constitute debt collection under

11  the [Rosenthal Act.]" *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D.

12  Cal. 2008).  *See also Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1071 (E.D. Cal.

13  2012) ("As this Court has explained previously, '[l]ogic suggests that non-judicial

14  foreclosure is not a debt collector's act under California Civil Code section

15  1788.2(c).'").  Accordingly, plaintiffs' Rosenthal Act claim is **DISMISSED** without

16  prejudice and with leave to amend.

17  6.      Unfair Competition and Accounting

18         Ms. Bitker's final two causes of action, for unfair competition, Cal. Bus. & Prof.

19  Code § 17200 and for an accounting, are derivative of her previous claims.  Ms.

20  Bitker's unfair competition claim is **DISMISSED** without prejudice and with leave to

21  amend, for failure to allege that defendants engaged in any unfair, unlawful or

22  fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200.

23         And Ms. Bitker's accounting cause of action is also **DISMISSED** without

24  prejudice and with leave to amend.  "A cause of action for an accounting requires a

25  showing that a relationship exists between the plaintiff and defendant that requires an

26  accounting, and that some balance is due the plaintiff that can only be ascertained by

27  an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179, 92 Cal. Rptr. 3d

28  696, 715 (2009).  Here, Ms. Bitker fails to adequately allege that any balance is due her

that would require an accounting.

## CONCLUSION

Defendants' motion to dismiss [Doc. No. 5] is **GRANTED**, and the complaint is dismissed with leave to amend.  Plaintiffs may file an amended complaint no later than **October 10, 2013**.  The temporary restraining order, entered March 29, 2013 [Doc. No. 10], remains in effect.

**IT IS SO ORDERED.**

DATED:  September 23, 2013

**CATHY ANN BENCIVENGO**
United States District Judge

13cv656